(95 Misc. Rep. 599)

## STAMP v. EIGHTY-SIXTH STREET AMUSEMENT CO.

(Supreme Court, Appellate Term, First Department.   June 8, 1916.)

THEATERS AND SHOWS ⬤➡6—LIABILITY FOR INJURIES TO PERSONS ATTENDING —TRAINED LIONS.

A theater proprietor is liable for injuries received by one of an audience in a panic caused by performing lions escaping and entering the orchestra, although he did not own or have charge of the lions and was not negligent.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 6; Dec. Dig. ⬤➡6.]

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by Emil Stamp against the Eighty-Sixth Street Amusement Company. From a judgment of the Municipal Court for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued March term, 1916, before LEHMAN, PENDLETON, and WHITAKER, JJ.

Henry G. Wenzel, Jr., of Brooklyn, for appellant.
William Butler, of New York City (R. Waldo MacKewan, of New York City, of counsel), for respondent.

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEHMAN, J.   It appears undisputed that on December 17, 1914, the plaintiff's wife was a spectator at a vaudeville performance in the defendant's theater and had paid an admission fee to see the performance. Among the acts on the program was a performance by trained lions. These lions did not belong to the defendant, and the defendant did not have direct charge of the lions. The defendant merely engaged the owner of the lions to give this part of the performance. After the lions had performed before the public, and another act was in progress, three of the lions escaped from their cages and entered the orchestra. When the audience saw the lions, they attempted to escape in panic, and in the resultant rush the plaintiff's wife was injured. Upon these facts the learned trial justice dismissed the complaint, on the ground that the defendant was not the owner of the lions, did not have charge of them, and was guilty of no negligence.

It is well established that the owner of a vicious animal is liable for any injury done by such animal. "The gravamen of the action, in such cases, is the keeping of the animal with knowledge of its propensities, and, if it does some mischief, negligence is not, strictly speaking, an element of the owner's liability. There is, perhaps, a presumption juris et de jure of negligence, based upon the keeping, and in that sense only an action would rest upon negligence. Card v. Case, 5 C. B. Rep. 622. The liability of an owner is absolute, and he is bound to keep the animal secure, or he must suffer the penalty for his failure to do so, in making compensation for the mischief done." See Molloy v. Starin, 191 N. Y. 21, 83 N. E. 588, 16 L. R. A. (N. S.) 445, 14 Ann. Cas. 57, and cases there cited. There is no doubt that a lion is a wild animal, presumed to be vicious, and every one is presumed to have knowledge of its vicious propensities. There can, therefore, be no doubt that the owner of the lions which escaped would be liable for any injuries directly caused by the lion. The trial justice has, however, held that this liability does not extend to the owner of the theater, who did not own the lions nor care for them.

It has been frequently held that one who harbors a vicious animal is subject to the same liability as the owner of the animal, but in practically all the cases where this rule has been announced the person who "harbored" the animal took direct charge and control of the animal. Inasmuch, however, as the gravamen of the action is the "keeping" of the animal with knowledge of its propensities, I think any third person shares in the owner's liability if by his acts he actually "keeps" the vicious animal himself, or if he takes part in the owner's keeping of it. To quote again from the case of Molloy v. Starin, supra:

"This rule of liability * * * is predicated upon the wrongful and unjustifiable conduct of the owner in keeping an animal of a vicious and therefore dangerous nature. If it is not securely confined, it is plainly a public nuisance, and security must be assured under all circumstances."

Applying these rules to the case before us, I think it is evident that the keeping of the lions insecurely confined constituted a public nuisance. The defendant was responsible in the first instance for the keeping of the animals on its premises. It had itself procured the

act, and invited the public to the theater to see it, and unless security was assured it took part in the maintenance of a public nuisance. Just as the owner could not under these circumstances relieve himself of liability by proof of due care in the securing of the animals, so the defendant cannot relieve itself of liability by showing that a third party owned and had the actual physical care of the animals. The defendant's wrong consists in the bringing and keeping of vicious animals on its premises. The manner in which they were kept there is immaterial, since the event shows that they were not securely confined.

The learned trial justice, however, relied on the same case of Molloy v. Starin, supra, from which I have quoted, as authority for the view that the defendant in this case is not responsible, in the absence of negligence, for injuries suffered by the plaintiff's wife. In that case it is true that the Court of Appeals by a divided court held that a common carrier which transported wild animals was not responsible, in the absence of negligence, for injuries caused by the animals. The decision in that case seems to be based on its own peculiar facts. The carrier had a lawful right, even if it was not legally bound, to transport wild animals in secure cages. In performing its functions as a common carrier it cannot be said to be "keeping" the wild animals in any fair sense, and it would be against public policy to extend the rule of liability to cover a case not within its reason. In this case, however, the defendant took upon itself the responsibility of bringing the wild animals on its own premises for its own purposes, and then inviting the general public to visit the premises. The defendant is therefore within the letter and spirit of the rule which fixes upon one who harbors a wild animal an absolute liability for injuries suffered as a direct result of his own acts.

It is also urged that, since the plaintiff's wife was injured by the panic-stricken crowd and not by the lions directly, the injuries were not in a legal sense caused by the lions. The panic of the crowd was, however, directly caused by the natural fear of an unsecured vicious animal, and was a result which might well have been foreseen by the defendant.

It follows that the judgment should be reversed, and a new trial ordered, with $30 costs to appellant to abide the event. All concur.