■ NELL THEOBALD, Respondent, v. GREY PUBLIC RELATIONS, INC., et al., Appellants; DAWN ANIMAL AGENCY, INC., et al., Appellants-Respondents, et al., Defendants.— Judgment, Supreme Court, New York County, after jury trial, reversed, on the law, on the facts and in the exercise of discretion, and vacated, and a new trial directed, with costs and disbursements to abide the event, unless plaintiff stipulates within 20 days of the publication of the order entered hereon to accept the sum of $150,000 in lieu of the amount of the judgment as appealed from, in which case the judgment, as modified, will be affirmed as to plaintiff against Grey Public Relations, Inc., Hoffman Motors Corp. and Dawn Animal Agency, Inc., with interest, and respondent shall recover of said appellants $50 costs and disbursements of the appeal. The charge of the court submitted the issue of absolute liability to the jury and there is ample evidence to support its finding of liability. We agree with the dissent that even if, as claimed, negligence were charged, there would be sufficient to sustain it. We find that the figure of $250,000, to which the original verdict was reduced, still to be grossly excessive in light of the nature and extent of the injuries and the special damages claimed. Plaintiff's doctors' bills totaled $1,880, her hospital expenses $2,440.26, plus a claimed loss of earnings of $800, making a total of $5,120. Plaintiff also has a residual scar approximately five by nine inches on the left upper leg. In considering all of the factors involved, we deem the figure of $150,000 to be adequate compensation. We find no basis for the imposition of liability

upon International Automobile Show, Inc. (International) and accordingly, as to it the complaint is dismissed on the law. International neither procured, harbored or kept the animal, made no representations to plaintiff regarding the docile qualities of the lion, nor did it in any way control the animal's actions. It was at most a lessor of the premises. In considering the size of the verdict, contrary to the "realistic" evaluation of the award expressed in the dissent, "the costs of litigation including lawyers' fees, may not be considered * * * Nor should one introduce * * * speculation as to continuing inflation" (*Zaninovich* v. *American Airlines*, 26 A D 2d 155, 160; see, also, *Chesapeake & Ohio Ry. Co.* v. *Barnaby*, 414 F. 2d 309; 2 Harper & James, Law of Torts, § 25.11). Concur — Stevens, P. J., Kupferman, Murphy and McNally, JJ.; McGivern, J., dissents in the following memorandum: I would affirm. In so doing, I am willing to concur in the reduction of the jury's verdict by the Trial Judge, but no further. I think the additional cutting down of a jury's verdict from $500,000 to $150,000 represents too radical a decapitation and too spectacular a substitution of our judgment for that of the jury; and it also fails to make a realistic allowance for inflation and an attorney's fee. That the present value of the dollar is a proper consideration has been countenanced by the Court of Appeals. (Cf. *Neddo* v. *State of New York*, 300 N. Y. 533, affg. 275 App. Div. 492, affg. 194 Misc. 379; see, also, *Lucivero* v. *Long Is. R. R. Co.*, 22 Misc 2d 674, 675.) "The jury also had a right in coming to a proper evaluation of the loss sustained by the decedent's next of kin to consider the constant erosion in the value of the dollar and the present and ever upward spiraling cost of living." (And see, also: PJI, Comment 2.290, p. 478.) The authorities provided by the majority are either unhelpful or inapposite. (As to *Zaninovich* v. *American Airlines*, 26 A D 2d 155, cf. candid footnote, p. 160.) The case of *Chesapeake & Ohio Ry. Co.* v. *Barnaby* (414 F. 2d 309) involves compensation under the Federal Employers' Liability Act, and is far afield. As to Harper & James (Law of Torts, vol. II, § 25.11) I am indebted to the majority for the following erudition: "For the most part damages will naturally be assessed in terms of the value money has at the time of those events which become significant in a lawsuit. * * * If the economy is marked by gradually rising costs, verdicts based on today's wages and costs and ideas of the value of money will naturally tend to exceed verdicts of a decade or more ago. * * * there is a well-nigh universal recognition that both courts and juries should take account of well-known and apparently more or less permanent changes in the purchasing power of money. Many courts would sanction a charge to the jury in general terms to this effect." Because of an arbitrary rule of common law, an attorney's fee is not an item of compensation, and I am not suggesting it is a proper item for a jury, but in reducing the verdict, we, as an appellate court, cannot blind ourselves to the fact there has been a jury trial here, and we know the attorney's fee will work a further diminution of what the plaintiff will actually receive. In my evaluation, the sum of $250,000 would represent a figure not unfair and more in accord with the record and a decent respect for a jury's judgment. It is also the figure of the trial court, involving his sound discretion, and should not be disturbed upon appeal unless a manifest abuse of discretion is indicated, and unless the figure is so grossly excessive as to shock the judicial conscience. (*Hyatt* v. *Pepsi-Cola Albany Bottling Co.*, 32 A D 2d 574; *Russell* v. *Monongahela Ry. Co.*, 262 F. 2d 349, 352; *Thomas* v. *Conemaugh & Black Lick R. R. Co.*, 234 F. 2d 429.) As the Federal courts have correctly reasoned, the question for an appellate tribunal in revising a jury verdict is not whether an appellate Judge would set aside a jury verdict if he were presiding at the trial "*but*

*whether the amount is so high that it would be a denial of justice to permit it to stand. We must give the benefit of every doubt to the judgment of the trial judge.*" (Italics added.) (*Gruenthal* v. *Long Is. R. R. Co.*, 393 U. S. 156, 159, citing with approval from *Dagnello* v. *Long Is. R. R. Co.*, 289 F. 2d 797, 806.) And it is interesting to note that in the *Gruenthal* case, the Supreme Court upset the revision of the Second Circuit Court and reinstated the jury award, and incidentally, the personal evaluation of the Trial Judge. In considering the gruesome marring suffered by this young woman, I do not find the figure of $250,000 grossly excessive, nor so monstrous as to shock one's conscience, when I reflect that the victim was a 21-year-old professional actress, model and dancer, unmarried, of acknowledged pulchritude, and on the threshold of her career. Said the treating surgeon, describing her condition on admission to the hospital: " The whole lower third of that thigh was torn and ripped by the bite; she also had a puncture wound of the right forearm and other scratches more superficially." And then there ensued four operations, leaving a residual scar, which the plaintiff tries to keep covered. And in any event, in my view, the trial was singularly free of substantial errors; none of the alleged errors was of sufficient significance to justify a reversal and another protracted trial — certainly not in a day of overcrowded calendars, and when we can unerringly predict the plaintiff would again recover. The clear burden and tenor of the charge was absolute liability as attendant upon the keeping of wild animals, and as laid down in such basic cases as *Molloy* v. *Starin* (191 N. Y. 21), *Stevens* v. *Hulse* (263 N. Y. 421), and *Stamp* v. *86th St. Amusement Co.* (95 Misc. 599). If, perchance, concepts of negligence entered into the mainstream of the charge because of the Judge's avowed aim to define terms, nevertheless there was sufficient proof to sustain a verdict on a theory of negligence: The defendants, without any orientation at all as to the proclivities of this specific " king of the jungle ", notwithstanding, recklessly assured this young woman as to her complete safety, she also being the merest tyro in respect of lions. And I also would sustain the jury's verdict as to all the defendants (cf. *Stamp* v. *86th St. Amusement Co., supra,* p. 601): " Inasmuch, however, as the gravamen of the action is the 'keeping' of the animal with knowledge of its propensities, I think *any third person shares* in the *owner's liability* if by his acts he actually 'keeps' the vicious animal himself, *or if he takes part* in the owner's keeping of it." (Italics added.) Lastly, the defendant, International Automobile Show, Inc., was no mere lessor of the premises. It was the show's sponsor and permitted, nay, encouraged, the presence of the lion, with full knowledge of its intended use, but with no specific knowledge of its carnivorous tendencies. Thus, I would affirm all around.