Kaye, J.
(dissenting). The new duty recognized by the majority effectively subjects a landlord to absolute liability for damage caused by a tenant’s dog or other animal with “vicious propensities” of which the landlord is aware at the start of a tenancy.[1] Because such an expansion deviates from established principles of law in this State, and because no sound reason is advanced to depart from these principles, I respectfully dissent.
While the majority states that it does not intend to subject landlords to the same strict liability as owners of animals, it is impossible to reconcile that statement with the result reached. If indeed the appellant landlord’s liability were governed by principles of ordinary negligence, the landlord having a duty “to take reasonable precautions for the protection of third persons, by provisions in the lease with respect to confinement or control of the dog or otherwise” (majority opn, p 577), there would be a reversal here. According to plaintiff, both at the time the landlord saw the dog and at the time of plaintiff’s injury, the dog had been tied up by the tenant. The landlord’s liability thus must rest not on a negligent failure to see that the dog was *579 confined or controlled but on strict liability deriving from the simple fact that the landlord knew at the time of leasing that the tenant kept a dog with “vicious propensities” (see Muller v McKesson, 73 NY 195, 199; Restatement, Torts 2d, § 509). There is no basis for such liability.
Terming this a case of first impression in this State, the majority relies on a decision of a California intermediate appellate court, Uccello v Laudenslayer (44 Cal App 3d 504). But liability there was predicated on a California statute (California Civil Code, § 1714) as well as case law construing that statute, both of which impose liability beyond common-law limits and neither of which is applicable in this State. New York has no comparable statute, and our case law has not extended liability to landlords for injuries caused to third persons by a dangerous condition on leased premises, even where the landlord had knowledge of that condition at the time the lessee took possession. (Campbell v Holding Co., 251 NY 446, 448.) This is consistent with the general rule as set forth in section 356 of the Restatement, Second, of Torts that: “Except as stated in §§ 357-362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession.”[2]
Here, the tenant’s dog was a dangerous condition on the land that caused injury to plaintiff, also on the land, at a time when the tenant, and not the landlord, was in possession and control of the premises. The fact that a landlord is aware that a dangerous condition exists when a tenant first takes possession does not render the landlord liable when the tenant, who has the opportunity to protect others from the dangerous condition, fails to do so. Liability should not be imposed upon one who has no control over the tort-feasor. (Pulka v Edelman, 40 NY2d 781, 783-784.) The garage owner in Pulka v Edelman knew that its patrons tended to create a dangerous condition by driving out of the garage across the adjacent sidewalk without *580 looking for pedestrians. To say that the landlord in the present case could have refused to let the premises to the dog’s owner and therefore owed a duty to plaintiff is akin to holding that the garage owner in Pulka owed a duty to pedestrians for which it could be liable for damage its patrons caused, because it could have refused to allow persons to park in its garage or could have taken steps to see that they did not exit the garage in a dangerous manner. We refused to so rule in Pulka, and we should not do so here. Foreseeability of injury does not create a duty.
In accordance with the rule in New York as to landlords’ liability and the recognition that a landlord has neither possession nor control of leased premises, lower courts have refused to extend liability to landlords for injuries caused by vicious dogs maintained by tenants on premises controlled by those tenants. (Laguttuta v Chisolm, 65 App Div 326.) This is so even if the landlord knew that the tenant kept a vicious dog on the premises. (Zwinge v Love, 37 AD2d 874; Denagy v Doscher, 40 Misc 2d 643.)[3] In Siegel v 1536-46 St. John's Place Corp. (184 Misc 1053), a landlord was held liable where the injury was caused by a dog kept by the landlord’s servant, the building superintendent, and the victim was bitten in a common area of the apartment building over which the landlord retained control. But Siegel clearly has no application where the injury occurs in an area in the possession and control of the tenant, not the absentee landlord.
No different result is required because it is alleged that the landlord knew before the premises were let that the tenant would be keeping a dog with vicious tendencies. In Theobald v Grey Public Relations (39 AD2d 902), plaintiff was injured by a lion used in an advertising display during an auto show. Although the court held the lessee-advertiser liable, the lessor of the premises was absolved of liability as it did not control the lion’s actions, even though the lessor was the show’s sponsor and “permitted, nay, encouraged, the presence of the lion, with full knowledge of *581 its intended use” (39 AD2d 902, 904 [McGivern, J., dissenting]).[4] Courts of other States have also refused to impose such liability on landlords alleged to have knowledge of a prospective tenant’s dangerous animal. (See Richards v Leppard, 118 NH 666; and Gilbert v Christiansen, _ Minn _, 259 NW2d 896). (Although both decisions were in part concerned with liability under State statutes, the extent of liability under those statutes is similar to that under the Restatement rule and common law of New York discussed above.)
Finally, as for the majority’s reliance on public policy, it is difficult to determine just what policy is being furthered by creating this new duty. Landlords are made insurers of the conduct of dogs residing with their tenants, when they do not control the tenants or the dogs, which contravenes our notions of fairness expressed in Pulka and elsewhere. The result is equally unfair to tenants. In view of the low threshold of proof required to show that one has knowledge that a dog has vicious propensities, tenants with dogs will, by virtue of broad potential liability imposed on landlords, have difficulty obtaining suitable housing. As the Minnesota Supreme Court stated in denying recovery against a lessor in a similar situation: “Despite plaintiffs’ attempt to demonstrate that the instant facts are unique, a judgment in their favor would render it difficult, either through unavailability or prohibitive cost, for prospective tenants with dogs to find housing. Determination of policy on this matter is a question for the legislature.” (Gilbert v Christiansen, _ Minn _, _, 259 NW2d 896, 898, supra.)
The order of the Appellate Division should be reversed, and summary judgment granted dismissing the complaint.
Judges Jasen, Meyer and Simons concur with Judge Jones; Judge Kaye dissents and votes to reverse in a *582 separate opinion in which Chief Judge Cooke and Judge Wachtler concur.
Order affirmed. Question certified answered in the affirmative.

. Knowledge of “vicious propensities” has been implied from the fact that a dog was kept as a watchdog (Russo v Schieber, 11 Misc 2d 842, affd 8 AD2d 986; Lagoda v Dorr, 28 AD2d 208; Shuffian v Garfola, 9 AD2d 910; Kessler v Katz, 212 App Div 838), from the fact that the dog was a German Shepherd, a breed said to have inherited vicious tendencies from “wolf ancestors” (Kelley v Hitzig, 71 Misc 2d 329; Ford v Steindon, 36 Misc 2d 339), and from the viciousness of the attack itself (Carlisle v Cassasa, 234 App Div 112). (See 3 NY Jur 2d, Animals, § 43.)

. None of the exceptions to this rule, set forth in sections 357-362 of the Restatement, are applicable. Section 356, which concerns a lessor’s liability to persons on the land by dangerous conditions, and not section 379 A (cited by the majority), dealing with injuries caused by nuisances on the land to persons outside the land, is the applicable rule here.

. This is in accord the Restatement rule, which extends liability to owners and harborers of dangerous animals, but not to landowners. (Restatement, Torts 2d, §§ 509, 514.) “[P]ossession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal.” (Restatement, Torts 2d, § 514, Comment a.)

. Although it was stated that the lessor in Theobald had no “specific knowledge of [the lion’s] carnivorous tendencies” (39 AD2d 902, 904), such knowledge would not be a requirement for liability. While the owner of a domestic animal, such as a dog, is not liable for injury caused by the dog unless he knows or should have known of the particular dog’s vicious tendencies (Muller v McKesson, 73 NY 195; Restatement, Torts 2d, § 509), an owner of a wild animal, such as a lion (see Restatement, Torts 2d, § 506, subd [1]) is liable for damage that results from dangerous propensities that are characteristic of the class of wild animals of which his animal is a part, whether or not he is aware of any specific vicious tendencies of the particular animal. (Restatement, Torts 2d, § 507.)