203 N.J. Super. 144 (1985)
495 A.2d 1375
EDWARD EYRICH AND PATRICIA EYRICH, PLAINTIFFS-RESPONDENTS, AND PATRICIA EYRICH, AS GUARDIAN AD LITEM OF MARY JO EYRICH, PLAINTIFF,
v.
ROBERT EARL, D/B/A ROBERTS BROS. CIRCUS; SCHOOLEY'S MOUNTAIN FIRE PROTECTION ASSOCIATION; WILLIAM BLEISNER, D/B/A WILMER ASSOCIATES, AND CARLTON YOUNG, DEFENDANTS-APPELLANTS, AND CONNIE H. DAM, D/B/A MISS CONSTANCIA LEOPARDS AND JAGUAR, AND BOARD OF EDUCATION OF THE TOWNSHIP OF WASHINGTON, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1985.
Decided August 5, 1985.
*145 Before Judges FRITZ, GAULKIN and LONG.
Robert F. Colquhoun, II argued the cause for appellant Schooley's Mountain Fire Protection Association (Colquhoun & Colquhoun, attorneys; Kevin F. Colquhoun, on the brief).
Colleen M. Ready argued the cause for appellants Earl, Bleisner and Young (Lieb, Berlin & Kaplan, attorneys; Donald L. Berlin, of counsel and on the brief).
Thomas M. McCormack argued the cause for respondents.
*146 The opinion of the court was delivered by FRITZ, P.J.A.D.
The facts of this tragic occurrence were set forth in detail by Judge Pressler the first time the matter reached this court. Eyrich for Eyrich v. Dam, 193 N.J. Super. 244 (App.Div. 1984), certif. den. 97 N.J. 583 (1984). No useful purpose will be served by an iteration of those facts here except to note that a child was mauled to death by a leopard as his neighbors, to whose care he had been entrusted, watched. They now reasonably allege permanent emotional residuals.
This time defendants appeal, on leave granted, from the grant of plaintiffs' motion for summary judgment, and the determination by Judge D'Ambrosio in the trial court on that motion that except for the Washington Township Board of Education on whose premises the event occurred, all defendants are strictly liable to plaintiffs. The substance of the reasoning of the trial judge was that each defendant had some part in the exposure of the public by invitation to the reasonably foreseeable distinct potential for serious harm in the presentation of these ferocious wild animals, whereby each should share in the responsibility for that harm when it occurred. The principal thrust of defendants' objection to that which the defendant Fire Protection Association characterizes in its brief as this "new theory of liability" is that these defendants (excluding Dam who is in default) were not "owners" or "keepers" or "possessors" of the animals. With the trial judge, we are satisfied that even if these labels are thought not to apply to the appealing defendants, this fact alone should not excuse them from answering for damage produced by a realization of the extraordinarily high risk of harm, even with proper care in selection and management, associated with the public presentation of wild beasts. Accordingly, we affirm.
We have already spoken twice in this opinion regarding the nature of the potential harm associated with the display of wild beasts and we begin from this springboard. The proposition should require no expert testimony. We are not speaking of *147 domesticated animals gone amuck. We are concerned with naturally wild and ferocious animals whose basic instincts are predatory from the day they are born. This observation cannot reasonably be a matter of dispute. In the absence of proper safeguards, even a caged wild animal presents a "manifest danger" to persons attracted to such an exhibit. Willis v. Dept. of Cons. & Ec. Dev., 55 N.J. 534, 537 (1970). This is the composition of that with which we here deal.
A dangerous propensity is presumed in wild animals and the keepers of such, at least, have been held strictly liable. Prosser and Keeton, Torts, § 76 at 542 (5 ed. 1984). "No member of such a species, however domesticated, can ever be regarded as safe, and liability does not rest upon any experience with the particular animal." Ibid. Taking all relevant circumstances of the matter before us into consideration, we are satisfied that whether wild animals are said to be a nuisance per se, ultra hazardous or abnormally dangerous, see State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 490-492 (1983), the fact remains that exposure of the public to them creates a "serious risk of harm to ... others which cannot be eliminated by the exercise of the utmost care" and the liability of all those producing that exposure should be absolute. Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425 (1959).
Our path is lighted by analogy from the products liability cases. The principal and perhaps only difference between those and our situation is there it is an inanimate thing which is unleashed upon the public whereas we are dealing with animals. The "risk-utility equation," explicated in Beshada v. Johns-Manville Products Corp., 90 N.J. 191, 199 (1982), where it is pointed out, borrowing from Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 238 (1981), that negligence is conduct-oriented and strict liability is product-oriented, lends support to our view. We think it not unreasonable to believe that the benefits bestowed by a few hours (or perhaps minutes) of *148 entertainment or recreation for those who like this sort of thing hardly justify the possibility, if not the probability, of disasters such as the one which occurred here. The magnitude of the risk certainly outweighs the social utility. In such a case those who provide the extraordinary risk must share the responsibility.
We will not examine the animal cases distinguishing ownership and control or possession or those which define control and possession, for the wrong, it seems to us, is not to be found in lawful possession or ownership, but rather in the exploitation of the high risk dangers involved in the public display of their possession. The conduct-oriented-product-oriented distinction of Freund, noted above, is apropos.
It is the invitation to terror which also invites the consequences which result. We see no sound reason, in the light of other applications of our law, why those participating and facilitating this invitation should be excused from responsibility. If we hold responsible a manufacturer whose product is converted by another into a working environment and yet a third person is thereby harmed, and that responsibility is imposed even though it was impossible for that manufacturer to know of the dangers of the product when he put it before the public, Beshada, supra (but see Feldman v. Lederle Laboratories, 97 N.J. 429 (1984)), what sound reason can we find to excuse all but the owner of the beast here? A principal is protected from actions for damages produced by the negligence of his independent contractor except in cases where there inheres in the offending instrumentality an extraordinary risk. Majestic Realty Associates, Inc., supra. As a matter of public policy, it is unthinkable that we should refuse to insulate those who contribute to putting a defective car on the road from claims by the ultimate purchaser for injuries resulting from the defect (Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960)), then tell one injured by a wild beast that he has no claim against those who put that beast on the road. The same *149 public policy which moved the Henningsen court compels us to affirm the judgment below in this case.
Certainly considerations such as these motivated those who decided Stamp v. Eighty-Sixth Street Amusement Co., 95 Misc. 599, 159 N.Y.S. 683 (App.Term 1916), cited by Judge D'Ambrosio here. That case charged not only the owner with responsibility, but also "any third person ... if he takes part in the owner's keeping of" a vicious animal (there lions). 95 Misc. at 601, 159 N.Y.S. at 684. We are satisfied that the Stamp court would do what we do here today. To the extent that Theobald v. Grey Public Relations, Inc., 39 App.Div.2d 902, 334 N.Y.S.2d 281 (App.Div. 1972) might be thought to disagree with Stamp, we point out only that Theobald obviously was much more concerned with the quantum of damages than anything else. To the extent it excused from liability one defendant, it did that in six printed lines, without reference to Stamp, without citation of one authority and without an explication, beyond a meager factual statement, of its theory on the dismissal. And see the dissent, 39 App.Div.2d at 902, 904, 334 N.Y.S.2d at 282, 284-285.
Affirmed. No costs to any party on this appeal.