239 N.J. Super. 158 (1990)
570 A.2d 1260
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARGARET ANN MYERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1989.
Decided February 28, 1990.
*161 Before Judges DEIGHAN, R.S. COHEN and BROCHIN.
John E. Wherry, Jr. argued the cause for appellant (Voorhees, Bennett & Wherry, attorneys, Natalia Rusak, on the brief).
Marijean Raffetto Stevens, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr., Attorney General, attorney, James E. Jones, Jr., Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Defendant Margaret Ann Myers was first indicted for the murder of her husband James A. Myers (N.J.S.A. 2C:11-3), and possession of a shotgun with a purpose to use it unlawfully against the person of another (N.J.S.A. 2C:39-4a). The indictment *162 was dismissed on defendant's motion and with the State's consent as the result of an off-the-record conversation between the Grand Jury and an assistant prosecutor. Defendant was then re-indicted on the same charges of murder and possession of the shotgun for an unlawful purpose. In addition, the new indictment charged her with aggravated manslaughter (N.J.S.A. 2C:11-4a); reckless manslaughter (N.J.S.A. 2C:11-4b(1)), and passion/provocation manslaughter. N.J.S.A. 2C:11-4b(2). Defendant moved to dismiss the indictment for failure of a speedy trial. The Law Division granted the motion. The State appealed, and we reversed the dismissal of the indictment and remanded for trial (A-5898-85T5, decided February 27, 1987).
The matter was tried to a jury, which found defendant not guilty of murder, guilty of aggravated manslaughter, not guilty of reckless manslaughter and passion/provocation manslaughter, and guilty of possessing the shotgun for an unlawful purpose. Defendant was sentenced for aggravated manslaughter to 20 years' imprisonment with a seven and one-half year mandatory minimum term, and for the gun possession to a five-year suspended term. She appealed, and we now affirm, but we remand for resentencing.
Before us, defendant makes the following arguments:
A. DEFENDANT WAS DENIED HER RIGHT TO A SPEEDY TRIAL.
1. THE SUPERIOR COURT, LAW DIVISION, CORRECTLY [sic] APPLIED THE FOUR-PRONGED BARKER V. WINGO TEST TO THE FACTS OF THIS CASE.
2. CONTRARY TO THE APPELLATE DIVISION'S EARLIER HOLDING, A CAREFUL CONSIDERATION OF THE QUESTION OF WHETHER DEFENDANT'S SPEEDY TRIAL RIGHTS WERE VIOLATED WILL NECESSARILY INCLUDE THE TIME WHICH ELAPSED BEFORE THE DISMISSAL OF THE FIRST INDICTMENT AND THE RETURN OF THE SECOND INDICTMENT.
B. THE STATE'S FAILURE TO SUBMIT DEFENSE COMMUNICATIONS TO GRAND JURY FOREPERSON NECESSITATES REVERSAL.
C. THE COURT'S FAILURE TO ASK THE QUESTIONS SUBMITTED BY DEFENSE COUNSEL ON VOIR DIRE CONSTITUTES AN ABUSE OF DISCRETION.
1. THE COURT'S JURY SELECTION PROCEDURE CONSTITUTED AN ABUSE OF DISCRETION.

*163 D. THE COURT'S ORDER REQUIRING THAT THE DEFENDANT SUBMIT TO A PSYCHIATRIC EXAMINATION VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS AS THE EXAMINATION RELATED TO A SELF DEFENSE CLAIM AND WAS NOT WITHIN RULE 3:12A.
E. THE EXCLUSION OF COUNSEL FROM THE PSYCHIATRIC EXAMINATION VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS.
F. THE VIOLATION OF THE COURT'S ORDER TO SOUND RECORD THE PSYCHOLOGICAL EXAMINATION FATALLY TAINTED THE PSYCHIATRIC EXAMINATION AND ITS USE AT TRIAL.
G. THE COURT BELOW ERRED IN ADMITTING THE TESTIMONY OF DR. BLUMBERG AND HIS CHARTS IN LIGHT OF THE TIME AVAILABLE TO DEFENSE TO PREPARE TO MEET THE EXPERT TESTIMONY.
H. THE STATE'S PRESENTATION OF HANDWRITING EXPERT AND PROSECUTION ARGUMENT RELATIVE TO THAT TESTIMONY VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL.
I. RECEIPT OF DISCOVERY JUST PRIOR TO AND DURING TRIAL VIOLATED DEFENDANT'S RIGHT TO FAIR AND EFFECTIVE ASSISTANCE OF COUNSEL. THE TRIAL COURT'S REFUSAL TO EXCLUDE [sic] NOT PROVIDED IN PRE-TRIAL DISCOVERY CONSTITUTE AN ABUSE OF DISCRETION AND THEREFORE REVERSIBLE ERROR.
J. THE CUMULATIVE EFFECT OF STATE'S DISCOVERY FAILURES, TOGETHER WITH ITS FAILURE TO COMPLY WITH COURT'S ORDER REQUIRING THE STATE'S EXPERT EXAMINATION RECORDED, MANDATES REVERSAL.
K. THE TRIAL COURT'S DENIAL OF THE DEFENDANT'S MOTION TO DISMISS COUNT FIVE AT CONCLUSION OF STATE'S CASE WAS ERROR.
L. THE PROSECUTION'S QUESTIONS TO DR. BALDWIN CONCERNING HER PERSONAL LIFE AND RELATIONSHIP WITH HER HUSBAND WARRANT A MISTRIAL OR CONSTITUTES REVERSIBLE ERROR.
M. THE STATE'S COMMENTS REGARDING DEFENDANT CONSTITUTED A COMMENT ON DEFENDANT'S FAILURE TO TESTIFY.
N. THE FAILURE OF THE COURT BELOW TO MAKE THE CHANGE REQUESTED BY THE DEFENSE CONSTITUTED REVERSAL [sic] ERROR.
O. THE VERDICT OF THE JURY WAS SO INTERNALLY INCONSISTENT AS TO WARRANT REVERSAL.
P. THE SENTENCE IMPOSED BELOW WAS EXCESSIVE.
We have thoroughly considered all of the arguments made by defendant, in the light of the record of the proceedings in the Law Division, and we find them to be clearly without merit. R. 2:11-3(e)(2). We remand, however, for resentencing. We add *164 the following comments on defendant's Points A, B, C-1, D, O and P.

I.
Defendant's first argument involves her motion for dismissal for lack of a speedy trial, a motion which the Law Division granted. We reversed the dismissal in 1987. Our decision disposed of this argument on its merits and is the law of the case. State v. Stewart, 196 N.J. Super. 138, 481 A.2d 838 (App.Div. 1984). An appellate decision which is interlocutory in the sense that it does not terminate the case nevertheless finally decides the meritorious issue. That the decision was interlocutory does not mean that it was "tentative and subject to more leisurely review at a later date" Id. 196 N.J. Super. at 144, 481 A.2d 838.

II.
Defendant's Point B has the following factual background. Just after the first indictment was dismissed, defendant's attorney wrote to the Grand Jury asking it to consider defendant's position that she killed her husband in self-defense, and that she suffered from the Battered Woman's Syndrome. The letter was addressed:
Foreperson
Burlington County Grand Jury
c/o Grand Jury Clerk
Burlington County Prosecutor's Office
Copies went to the Prosecutor and the Assignment Judge.
The attorney stated in his letter that the Grand Jury would be considering evidence presented by the prosecutor in the case of Margaret Ann Myers, and that the Grand Jury had the right "to require any additional evidence that you deem appropriate." The attorney said that defendant killed her husband, but only in self-defense. He quoted from and supplied a copy of State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984), which discussed the Battered Woman Syndrome. He cited scientific literature on *165 the subject, and attached copies of reports of examination by Dr. Robert Sadoff, a forensic psychiatrist, and Jean Metz of the Burlington County Battered Woman's Shelter. The attorney stated also that defendant had seen Dr. Nancy Baldwin who rendered an oral report consistent with those of Dr. Sadoff and Ms. Metz. Finally, the attorney enclosed the report of Dr. Lenore Walker whom he described as a renowned author and expert on battered women. He asked the foreperson to communicate with the other Grand Jurors to consider his letter and the documents attached in reaching a determination whether to indict defendant.
The response was from an assistant prosecutor. She stated that affirmative defenses are generally inappropriate for the Grand Jury to hear, but that she would, in her discretion, consider presenting this one if defendant would submit to an examination by an expert chosen by the State, and testify before the Grand Jury. The assistant prosecutor did not say she had discussed the matter with the Grand Jury, or that the letter had reached the foreperson. After some negotiation, the attorney declined the assistant prosecutor's offer. He never heard from the Grand Jury.
There the matter dropped. The case was presented and defendant was indicted. As far as we know, the Grand Jury never received the attorney's letter. We know it received no information or instructions on the Battered Woman's Syndrome. Defendant did not move for an order requiring the State or the Grand Jury to do anything about the matter before or after indictment. She did not move to dismiss the indictment. Cf. State v. Del Fino, 100 N.J. 154, 159-161, 495 A.2d 60 (1985).
The question defendant seeks us to answer is whether the State's apparent interception of her attorney's letter addressed to the Grand Jury foreperson for consideration by the Grand Jury invalidates her conviction. Our answer is that it does not. Ignoring all of the other problems in the matter, it is idle to *166 speculate after conviction whether the Grand Jury would have decided to consider the material, or would have declined to indict as the result of considering a defense which the trial jury fully explored and found insufficient to raise a reasonable doubt of defendant's guilt. The conviction, in those circumstances, cures the alleged defect in the State's conduct relating to the Grand Jury. Furthermore, we do not consider the prosecutor's actions in this uncertain area as misconduct sufficient to justify dismissal of the indictment.
Because defendant never sought any relief in the Law Division we need not say whether any would have been granted. We point out, however, that the dual function of the Grand Jury is not only to determine if there is probable cause to believe a crime has been committed but also to protect citizens against unfounded criminal prosecutions. Branzburg v. Hayes, 408 U.S. 665, 686-687, 92 S.Ct. 2646, 2659-60, 33 L.Ed.2d 626 (1972). The Grand Jury protects the innocent against hasty, malicious and oppressive persecution. State v. Del Fino, 100 N.J. at 164, 495 A.2d 60.
Defendant argues that the Grand Jury's function cannot be fulfilled if prosecutors control what it may or may not consider. The State responds that it is far from clear that a subject of Grand Jury attention has the right to communicate with it. Perhaps, if the prosecutor may not restrict the scope of a Grand Jury investigation, a target should not be entitled to expand it. The Assignment Judge of each vicinage orders and organizes the Grand Juries, R. 3:6-1, and instructs them. The Assignment Judge's role was comprehensively discussed by the Supreme Court in State v. Murphy, 110 N.J. 20, 538 A.2d 1235 (1988). The problem there was the possible disqualification of two Grand Jurors to hear a particular matter. The prosecuting attorneys who dealt with the problem themselves were said by the Supreme Court to have "demonstrated extraordinarily poor judgment" in not referring it to the Assignment Judge. 110 N.J. at 36, 538 A.2d 1235. But, in an area without available *167 prior guidance, the Court declined, as we do here, to conclude that there was misconduct that required reversal of the conviction. Generally, see 1 LaFave & Israel, Criminal Procedure, § 8.4(b) p. 621, 628 (1984); Annot., Power of Court to Control Evidence or Witnesses Going Before Grand Jury, 52 A.L.R.3d 1316 (1973).

III.
In her Point C-1, defendant argues that the procedure employed in the selection of her jury was in error and gave the State an unfair advantage.
After both the State and defendant had exercised some but not all of their peremptory challenges, it was the State's turn. The Assistant Prosecutor said, "Your honor, I pass at this time." Defense counsel then announced, "[t]he jury as presently constituted is satisfactory to Margaret Myers and to myself." In most criminal courtrooms in New Jersey, we believe, that would have been the end of the selection process. We believe that to be so, but our information is entirely anecdotal.
Instead, the assistant prosecutor was then permitted to exercise another peremptory challenge. Defense counsel objected and suggested that the jury be impanelled. The prosecutor gave his position:
I don't know where Mr. Wherry is practicing. In Burlington County it's acceptable to pass and the jury is not acceptable until the individual parties indicate that it's their intention. It's not unheard of to pass. I'm sorry Mr. Wherry has that misinterpretation, but I've been trying cases here for ten years and passed many times.
The judge stated correctly that there was no court rule or controlling case law. He said it was a matter of local practice which "varies from judge to judge. But my practice is the party may pass and then challenge." After further argument, the judge explained that he follows
the practice that either side can pass and then, if the other side passes, that side can in turn come back. You pass twice and then the jury is accepted.
*168 We ourselves are not familiar with that practice. There is, however, no vice inherent in it. If the parties know the ground rules in advance, we can see no advantage falling to one or another. We are reminded of State v. Brunson, 101 N.J. 132, 501 A.2d 145 (1985). There, defendant was entitled to 20 peremptory challenges and the State 12. The trial judge adopted a procedure different from the one generally used. He required defendant to exercise two challenges for each one State challenge for the first eight rounds, and then, for four rounds, they were to exercise challenges alternately. Defendant argued that his statutory excess of challenges was unfairly diluted. The Supreme Court disagreed and affirmed. The Court said, however:
We are nevertheless impressed by the desirability of a standardized procedure for the implementation of the exercise of peremptory challenges in criminal cases. Accordingly, we will solicit the recommendation of our Criminal Practice Committee as to the establishment by Court Rule of a procedure governing the exercise of peremptory challenges. In the interim, to maintain uniformity trial courts should refrain from using peremptory challenge procedures that differ from the customary, one-for-one, alternating method.
No such Rule has been adopted. The passage of time has not, however, lessened the "desirability of a standardized procedure for the implementation of the exercise of peremptory challenges in criminal cases." We have insufficient information on the general practice around the State on our problem to warn judges away from differing methods. Until some greater progress is made toward adoption of a uniform court rule, however, trial judges should at least determine, before starting jury selection, if counsel is unfamiliar with local practice. If so, the local practice should be fully explained. We are not now prepared to bar any fair and reasonable approach that has been adopted locally. We only caution that serious harm could arise if all counsel do not know the rules.
Here, there is no reason to believe that the jury selection process was distorted or rendered unfair. Counsel's surprise was understandable, but it was dissipated before any harm was done, and there were no untoward consequences to defendant.

*169 IV.
Defendant's Point D attacks the Law Division's order requiring that defendant submit to a psychiatric examination in connection with her announced intention to invoke the Battered Woman's Syndrome. She argues that the order violated her constitutional right not to testify.
State v. Whitlow, 45 N.J. 3, 25, 210 A.2d 763 (1965) held constitutional an order requiring a defendant intending to offer evidence of his insanity to submit to examination by a psychiatrist chosen by the State, including, if necessary, a discussion of the criminal event. There was no preexisting court rule or statute permitting such an examination. State v. Obstein, 52 N.J. 516, 529-530, 247 A.2d 5 (1968), extended Whitlow to cases in which a defendant intends to offer psychiatric evidence of mental disability short of insanity. R. 3:12 now covers the subject.
The Battered Woman's Syndrome does not involve insanity, mental disability or diminished capacity. Rather, it bears on the self-defense issue of the honesty and reasonability of defendant's belief that she was in imminent danger of serious injury. The existence and impact of the Battered Woman's Syndrome is an appropriate subject for expert testimony. State v. Kelly, 97 N.J. 178, 197-206, 478 A.2d 364 (1984).
The reason that the State may have an expert examine defendant in cases of claimed insanity or diminished capacity is to give the State the opportunity to respond to the anticipated testimony of defendant's experts on the same subject. No reason appears to us why the Battered Woman's Syndrome in its relation to self-defense should be treated any differently. Also involved here is the matter of insight into the operations of defendant's mind, which defendant seeks to illuminate and explain through the testimony of experts who have had the opportunity to examine her. As in cases of insanity and diminished capacity, the State must be afforded a similar opportunity *170 and the management of the constitutional implications of defendant's statements to the examining experts should be essentially the same. See Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); Buchanan v. Kentucky, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).
We hold, therefore, that a defendant who invokes the Battered Woman's Syndrome and intends to introduce expert testimony with regard to it must submit to examination by appropriate experts selected by the State the results of which will be admissible to rebut the defense. We note that New Hampshire has reached the same result. State v. Briand, 130 N.H. 650, 547 A.2d 235 (1988). Minnesota disagrees, but on the basis of a conclusion, contrary to New Jersey's, that expert testimony whether defendant suffers from the Battered Woman's Syndrome may not be adduced by either side. State v. Hennum, 441 N.W.2d 793 (Minn. 1989).

V.
In Point O, defendant argues that the guilty verdict for aggravated manslaughter is inconsistent with the not-guilty verdicts for reckless manslaughter and passion/provocation manslaughter. For that reason, defendant says the guilty verdict must be reversed. We disagree.
What happened is apparent. The jury was presented with four homicide verdicts: guilty or not guilty of murder and three manslaughters. Some of the jurors were unsatisfied that the homicide was purposeful or knowing, and therefore murder. Passion/provocation manslaughter was set aside as requiring factual elements of which there was no evidence. As to reckless manslaughter, the jury was not told whether or not to continue voting if it found defendant guilty of aggravated manslaughter. It was also not told what was the result if it found defendant guilty of more than one charge. An alert but uninformed jury could well have thought that it was to convict, if at all, of only one of the charges so that defendant would not *171 be exposed to multiple penalties. That may seem silly to persons with criminal courtroom experience, but piling on guilty verdicts of lesser included or related charges may seem just as silly to sensible but inexperienced lay jurors. An instruction in this regard could prevent such confusion in the future.

VI.
Defendant's final attack is on her sentence. We are satisfied that defendant's sentence for aggravated manslaughter met the tripartite test of State v. Roth, 95 N.J. 334, 363-365, 471 A.2d 370 (1984). See also State v. Pillot, 115 N.J. 558, 564, 560 A.2d 634 (1989). There is, however, a problem with defendant's suspended sentence for gun possession which the State has pointed out.
At the time of the sentence, the Graves Act required a custodial sentence, with a mandatory minimum term for a violation of N.J.S.A. 2C:39-4a. See N.J.S.A. 2C:43-6c. The suspended sentence was therefore illegal and has to be corrected. The correction, however, involves the prospect of substantial additional prison time. We therefore remand not only for the correction of the illegal sentence, but also for resentencing on the aggravated manslaughter charge and for possible consideration of the application of the relief provisions of N.J.S.A. 2C:43-6.2.
We have concluded that the gun possession conviction is viable because one of the versions the jury could believe from the evidence was that defendant procured the shotgun from another part of the house and carried it to the room where it was used to shoot her husband, with a purpose to do just that. See State v. Mieles, 199 N.J. Super. 29, 40-41, 488 A.2d 235 (App.Div. 1985); State v. Bill, 194 N.J. Super. 192, 195, 476 A.2d 813 (App.Div. 1984). We also recognize, however, that even in those circumstances, the possession was very brief, and the sentencing court apparently believed after hearing the trial of the matter that the possession did not justify additional incarceration. *172 All of these considerations can affect the ultimate sentence on remand.
The judgment is affirmed, except that we remand for resentencing.