279 N.J. Super. 335 (1994)
652 A.2d 789
JEAN MARIE CUSSEAUX, PLAINTIFF,
v.
WILSON PICKETT, JR., DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided August 4, 1994.
*336 Barry D. Epstein, for plaintiff (Edward P. Drummond, Jr., Esq. on the brief).
Charles Rabolli, Jr., for defendant (Melli & Wright, P.C., attorneys).
NAPOLITANO, J.S.C.

I. INTRODUCTION
This matter is before the court on defendant's motion to dismiss the first count of plaintiff's complaint for failure to state a cause of action pursuant to R. 4:6-2(e). The defendant argues that the "battered-woman's syndrome" is not recognized as an affirmative cause of action by the courts of this State. This court denies the *337 motion to dismiss and holds that the "battered-woman's syndrome" is now a cognizable cause of action under the laws of New Jersey.

II. FACTS
Plaintiff, Jean Marie Cusseaux, lived with the defendant, Wilson Pickett, Jr., for a period of about ten years, from 1982 to 1992. Plaintiff alleges that, during this time period, defendant severely mistreated her, jeopardized her health and well-being, and caused her physical injuries on numerous occasions. Plaintiff further alleges that defendant's actions were part of a continuous course of conduct and constituted a pattern of violent behavior, frequently associated with his being intoxicated. Plaintiff alleges that the acts of abuse and violence are too numerous to detail with specificity; however, on a number of occasions, she was required to seek medical attention.[1] As a result of the defendant's behavior, plaintiff alleges that she was caused to suffer the condition of the battered-woman's syndrome, which includes serious personal and emotional injuries that will require medical and other attention. On April 15, 1992, defendant's final assault allegedly caused plaintiff finally to end the relationship.

III. LAW

A. Standard
Pursuant to R. 4:5-2,

*338 a pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled.
The pleading is intended to apprise fairly the adverse party of the claims and issues raised. Spring Motors Distributors, Inc. v. Ford Motor Co., 191 N.J. Super. 22, 29-30, 465 A.2d 530 (App.Div. 1983) aff'd in part and rev'd in part on other grounds, 98 N.J. 555, 489 A.2d 660 (1985); Jardine Estates v. Koppel, 24 N.J. 536, 133 A.2d 1 (1957). The complaint must do more than give notice of a claim, it must state the essentials of a cause of action. Schantz v. Rachlin, 101 N.J. Super. 334, 244 A.2d 328 (Ch.Div. 1968). Implicit in these requirements is the necessity that there be a cognizable cause of action upon which relief can be granted.
R. 4:6-2(e) permits a party to make a motion to dismiss where there is no such cognizable claim.
Every defense, legal or equitable, in law or in fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses may at the option of the pleader be made by motion, with briefs: (a) lack of jurisdiction over the subject matter, (b) lack of jurisdiction over the person, (c) insufficiency of process, (d) insufficiency of service of process, (e) failure to state a claim upon which relief can be granted, (f) failure to join a party without whom the action cannot proceed, as provided by R. 4:28-1. (emphasis added).
However, the New Jersey Supreme Court has expressly held that trial courts must accord any plaintiff's complaint a "meticulous" and "indulgent" examination. Printing Mart v. Sharp Electronics, 116 N.J. 739, 771, 563 A.2d 31 (1989). In Printing Mart, the Supreme Court held that a reviewing court must
[search] the complaint in depth and with liberality [] ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of a claim, opportunity being given to amend if necessary.
[Id. at 746, 563 A.2d 31].
The Supreme Court thus admonished the trial courts that they are
to approach with great caution applications for dismissal under Rule 4:6-2(e) for failure of a complaint to state a claim upon which relief may be granted. We have sought to make clear that such motions, almost always brought at the very earliest stage of litigation, should be granted only in the rarest of instances. [Id.]
*339 Accordingly, it is in keeping with this clear signal from the Supreme Court to seek to preserve a plaintiff's cause of action that this trial court will consider the present application.

B. Battered-Woman's Syndrome
The battered-woman's syndrome was first recognized by the courts in New Jersey in State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984), where the Court acknowledged it as an element of self-defense. The Court held that expert testimony on the battered-woman's syndrome was admissible because it is relevant and material to establish the honesty and reasonability of the defendant's belief that she was in imminent danger of serious bodily injury or death.[2]Kelly, supra, 97 N.J. at 201, 478 A.2d 364; see also State v. Meyers, 239 N.J. Super. 158, 169, 570 A.2d 1260 (App.Div. 1990).
The Kelly Court relied heavily on the then recently enacted Prevention of Domestic Violence Act, N.J.S.A. 2C:25-1 to 2C:25-16.[3]
The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitant; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is *340 therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.

* * * * * * * *
... Further, it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public. To that end, the Legislature encourages ... the broad application of the remedies available under this act in the civil and criminal courts of this state....
[N.J.S.A. 2C:25-18 (emphases added).]
The Court stated that there is a high incidence of unreported abuse because there exists a stigma against battered women that is institutionalized in the attitudes of law enforcement agencies, not to mention the stereotypes and myths concerning the characteristics of battered women and their reasons for staying in battering relationships. Kelly, supra, 97 N.J. at 191-92, 478 A.2d 364.[4] However, as the problem began receiving more attention, the focus turned to the effects a sustained pattern of physical and psychological abuse can have on a woman.
The Kelly Court stated that the battered-woman's syndrome is
a series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives.
[Kelly, supra, 97 N.J. at 193, 478 A.2d 364.]
The abuse is cyclical. The first stage is characterized by minor battering incidents and verbal abuse while the woman, beset by fear and tension, attempts to be as placating and passive as possible in order to stave off more serious violence. Kelly, supra, 97 N.J. at 193, 478 A.2d 364 (citing L. Walker, supra, at 56-59). The second phase is characterized by acute battering, which is triggered when the tension between the woman and the batterer becomes intolerable. Kelly, supra, 97 N.J. at 193, 478 A.2d 364 *341 (citing L. Walker, supra, at 59-65). The third phase is characterized by extreme contrition and loving behavior on the part of the battering male.
During this period the man will often mix his pleas for forgiveness and protestations of devotion with promises to seek professional help, to stop drinking, and to refrain from further violence.
[Kelly, supra, 97 N.J. at 193, 478 A.2d 364 (citing L. Walker, supra, at 65-70).]
It is this third phase that explains why more women simply do not leave their abusers.
Different women have different reactions to this cycle. Some perceive it as normal, some may not wish to acknowledge the reality of the situation and still others become so demoralized and degraded by the fact that they cannot predict or control the violence that they sink into a state of psychological paralysis and become unable to take any action at all to improve or alter the situation. There is a tendency in battered women to believe in the omnipotence or strength of their battering husbands and thus to feel that any attempt to resist is hopeless. Kelly, supra, 97 N.J. at 194-95, 478 A.2d 364 (citations omitted). Further, external social and economic factors often make it difficult for some women to extricate themselves from battering relationships. Kelly, supra, 97 N.J. at 195, 478 A.2d 364. Women typically earn less money and are more responsible for child care than men.
Thus, in a violent confrontation where the first reaction might be to flee, women realize soon that there may be no place to go. Moreover, the stigma that attaches to a woman who leaves the family unit without her children undoubtedly acts as a further deterrent to moving out.
[Kelly, supra, 97 N.J. at 195, 478 A.2d 364.]
In addition, these women are frequently unwilling to confide in others because of the shame, humiliation, and fear of reprisal by their husbands. Thus, they literally become trapped by their own fear. Kelly, supra, 97 N.J. at 195, 478 A.2d 364 (citation omitted).
The Kelly Court stated that
[t]he combination of all of these symptoms  resulting from sustained psychological and physical trauma compounded by aggravating social and economic factors  constitutes the battered-woman's syndrome. Only by understanding these unique pressures that force battered women to remain with their mates, despite their longstanding *342 and reasonable fear of severe bodily harm and the isolation that being a battered woman creates, can a battered woman's state of mind be accurately and fairly understood.
[Kelly, supra, 97 N.J. at 196, 478 A.2d 364.]
Further, the Kelly Court noted that the battered-woman's syndrome is beyond the understanding of the average person. Kelly, supra, 97 N.J. at 209 n. 15, 478 A.2d 364 (citing Ibn-Tamas v. United States, 407 A.2d 626 (D.C. 1979); Smith v. State, 247 Ga. 612, 277 S.E.2d 678 (1981); Hawthorne v. State, 408 So.2d 801 (Fla. Dist. Ct. App. 1982), petition for review denied, 415 So.2d 1361 (Fla. 1982); State v. Anaya, 438 A.2d 892 (Me. 1981)). Accordingly, the Kelly Court held that expert evidence on the battered-woman's syndrome should be admitted when it is relevant to the defendant's claim of self-defense, specifically with respect to the honesty and reasonability of defendant's belief that she was in imminent danger.
Notwithstanding, there has yet to be a civil case in New Jersey that has recognized the battered-woman's syndrome. Thus, it is this case of first impression which now addresses whether the battered-woman's syndrome is a cognizable cause of action under the laws of New Jersey.

IV. ANALYSIS
It is well established in this State that an injured party may sustain a cause of action for serious personal and emotional injuries that are directly and causally related to the actions of another person. Eyrich for Eyrich v. DAM, 193 N.J. Super. 244, 473 A.2d 539 (App.Div.), certif. denied, Eyrich v. Dam, 97 N.J. 583, 483 A.2d 127 (1984), appeal after remand, 203 N.J. Super. 144, 495 A.2d 1375 (App.Div. 1984). As discussed above, the Legislature has specifically found domestic violence to be a serious crime against society. N.J.S.A. 2C:25-18. More importantly, in enacting the Prevention of Domestic Violence Act, the Legislature recognized that our judicial and law enforcement system was insufficient to address the problem. If this Act had never become law, the ubiquitous deficiency of our legal system would continue *343 in spite of the fact that the acts listed among those classified as "domestic violence" under the statute were already criminal offenses.[5]
The efforts of the Legislature to this end should be applauded. However, they are but steps in the right direction. As is the case with the domestic violence statute where existing criminal statutes were inadequate, so too are the civil laws of assault and battery insufficient to redress the harms suffered as a result of domestic violence. Domestic violence is a plague on our social structure and a frontal assault on the institution of the family. The battered-woman's syndrome is but one of the pernicious symptoms of that plague. Though the courts would be hard-pressed to prescribe a panacea for all domestic violence, they are entrusted with the power to fashion a palliative when necessary. The underpinning of our common law and public policy demand that, where the Legislature has not gone far enough, the courts must fill the interstices. As the Legislature stated,
it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions....

*344 [N.J.S.A. 2C:25-18 (emphasis added).]
Thus, this court will recognize the battered-woman's syndrome as an affirmative cause of action under the laws of New Jersey.
In order to state a cause of action for the battered-woman's syndrome, the plaintiff must allege the following elements. The plaintiff must show 1) involvement in a marital or marital-like intimate relationship; and 2) physical or psychological abuse perpetrated by the dominant partner to the relationship over an extended period of time;[6] and 3) the aforestated abuse has caused recurring physical or psychological injury over the course of the relationship; and 4) a past or present inability to take any action to improve or alter the situation unilaterally.[7]
In Laughlin v. Breaux, 515 So.2d 480 (La. App. 1 Cir.1987), the court was faced with a similar application by a woman seeking affirmative damages based upon the battered-woman's syndrome. The Louisiana court rejected the argument that the battered-woman's syndrome constituted a continuing tort. Laughlin, supra, 515 So.2d at 482. Rather, the court stated that each incident of battery and assault was a separate cause of action. Thus, the plaintiff was precluded from recovering damages for incidents that occurred beyond the effective statute of limitations period. This Court totally rejects the Laughlin holding to the extent that it asserts that the incidents of assault and battery were individual *345 causes of action rather than a continuing tort. Because the battered-woman's syndrome is the result of a continuing pattern of abuse and violent behavior that causes continuing damage, it must be treated in the same way as a continuing tort. It would be contrary to the public policy of this State, not to mention cruel, to limit recovery to only those individual incidents of assault and battery for which the applicable statute of limitations has not yet run. The mate who is responsible for creating the condition suffered by the battered victim must be made to account for his actions  all of his actions. Failure to allow affirmative recovery under these circumstances would be tantamount to the courts condoning the continued abusive treatment of women in the domestic sphere. This the courts cannot and will never do.

V. CONCLUSION
This court holds that the battered-woman's syndrome constitutes an affirmative cause of action under the laws of New Jersey. Defendant's motion to dismiss Count One of the complaint for failure to state a cause of action is denied.
NOTES
[1] In plaintiff's motion papers, plaintiff alleges several of the acts of violence. Plaintiff was physically assaulted by defendant's fists on April 14, 1986 and July 7, 1990, in December 1990, on April 5, 1992, and on May 15, 1992. On at least one of those dates, her nose was broken and on three of those occasions she was forced to seek treatment at three separate hospital emergency rooms. On other occasions, defendant threw objects at the plaintiff. Specifically, in November of 1988, the defendant struck the plaintiff with a heavy kitchen pot; in March of 1989, plaintiff was struck with an unidentified object; in February 1990, plaintiff was struck with a large corningware dish; and in March of 1990, plaintiff was struck by a gallon container of Chlorox bleach. The defendant denies these allegations.
[2] Battered women exhibit common personality traits: low self-esteem, traditional beliefs about the home, the family and the female sex role, tremendous feelings of guilt that their marriages are failing, and the tendency to accept responsibility for the batterer's actions. Kelly, supra, 97 N.J. at 195, 478 A.2d 364 (citing L. Walker, The Battered Woman (1979) at 35-36). Further, battered women are paralyzed by the fear of their spouse's response if they attempt to leave the relationship.
[3] In 1991, N.J.S.A. 2C:25-1 to 2C:25-16 were repealed and N.J.S.A., 2C:25-17 to 2C:25-33 were enacted in their place. N.J.S.A. 2C:25-18 contains essentially the same language as that contained in N.J.S.A. 2C:25-2, upon which the Kelly Court relied.
[4] Some of the popular misconceptions are that battered women actually enjoy being beaten and that they purposely provoke their mates into beating them and that they are free to leave those relationships at any time. Kelly, supra 97 N.J. at 192, 478 A.2d 364 (citing L. Walker, supra, at 19-31).
[5] N.J.S.A. 2C:25-19 states that "Domestic Violence" means the occurrence of one or more of the following acts inflicted upon a person protected under this act by an adult or an emancipated minor:
 (1) Homicide N.J.S. 2C:11-1 et seq.
 (2) Assault N.J.S. 2C:12-1
 (3) Terroristic threats N.J.S. 2C:12-3
 (4) Kidnapping N.J.S. 2C:13-1
 (5) Criminal restraint N.J.S. 2C:13-2
 (6) False imprisonment N.J.S. 2C:13-3
 (7) Sexual assault N.J.S. 2C:14-2
 (8) Criminal sexual contact N.J.S. 2C:14-3
 (9) Lewdness N.J.S. 2C:14-4
 (10) Criminal mischief N.J.S. 2C:17-3
 (11) Burglary N.J.S. 2C:18-2
 (12) Criminal trespass N.J.S. 2C:18-3
 (13) Harassment N.J.S. 2C:33-4

[6] In order to be classified as a battered woman, the victim must go through the battering cycle at least twice. Any woman may find herself in an abusive relationship with a man once. If it occurs a second time, and she remains in the situation, she may be a battered woman. Kelly, supra, 97 N.J. at 193, 478 A.2d 364 (citing L. Walker, supra, at xv).
[7] Nothing in this opinion should be construed to limit the application of these principles only to women in traditional marital or marital-like relationships. Indeed, in any domestic intimate partnership, the victim, whether female or male, whether the union is heterosexual or homosexual, may plead a battered-person syndrome so long as the aforementioned requirements are met. It is the unhappy history of domestic violence against women in traditional marital relationships which has given this tort its name.