RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2990-12T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

DAVID GRANSKIE, JR.,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

October 16, 2013

APPELLATE DIVISION

Argued September 17, 2013 — Decided October 16, 2013

Before Judges Reisner, Alvarez and Ostrer.

On appeal from the Superior Court of New
Jersey, Law Division, Somerset County,
Indictment No. 09-08-0572.

Nathan Howe, Assistant Prosecutor, argued
the cause for appellant (Geoffrey D.
Soriano, Somerset County Prosecutor,
attorney; Joseph V. Rocchietti, Assistant
Prosecutor, and Mr. Howe, on the briefs).

Jacqueline E. Turner, Assistant Deputy
Public Defender, argued the cause for
respondent (Joseph E. Krakora, Public
Defender, attorney; Ms. Turner, of counsel
and on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

By leave granted, the State appeals from a January 16, 2013 trial court order permitting the defense to present expert psychiatric testimony concerning the potential impact of defendant's opiate addiction and withdrawal symptoms on the reliability of his confession. We conclude that the defense may present expert psychiatric testimony, so long as it is limited pursuant to the principles stated in this opinion.

Defendant was suspected of participating in a brutal sexual assault and murder. Two of his friends confessed to their involvement, but did not implicate defendant. He initially denied any involvement in the crime. However, a few days later, while he was in jail on an unrelated warrant, he confessed. Prior to his trial, defendant claimed that the confession was not voluntary and was unreliable, because he was suffering from severe heroin withdrawal symptoms at the time he gave the statement.

Following a N.J.R.E. 104 hearing, the trial judge held that at an upcoming Miranda[1] hearing and at trial defendant could present an expert psychiatrist to testify about the possible relationship between his heroin withdrawal and his confession. The expert would be permitted to testify that defendant was addicted to heroin and was suffering from withdrawal when he

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

gave his statement to the police, and that his claims about the effects of withdrawal were "consistent with his claim that he was giving an unreliable statement at the time" of his confession, "given his history of issues with heroin dependence."

In a written opinion, dated January 15, 2012, the trial judge explained his reasons for admitting the testimony. Relying on State v. King, 387 N.J. Super. 522 (App. Div. 2006), he concluded that the testimony was admissible to explain defendant's mental disorder to the jury and to explain why someone suffering from heroin withdrawal might confess to a crime as a result of the effect of the withdrawal symptoms, whether or not the confession was accurate. However, the judge ruled that the expert could not testify as to whether this defendant's statement was reliable or unreliable. After reviewing the record and the applicable law, we agree with the trial judge.

In evaluating a proffer of expert testimony, the court must apply the provisions of N.J.R.E. 702.

> [T]he rule sets forth three basic requirements for the admission of expert testimony: "'(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that an expert's testimony could be sufficiently reliable; and (3) the witness

> must have sufficient expertise to offer the
> intended testimony.'"
>
> [State v. Torres, 183 N.J. 554, 567-68
> (2005) (citation omitted).]

Those requirements are construed "liberally" in favor of admitting expert testimony. State v. Jenewicz, 193 N.J. 440, 454 (2008). We review a trial judge's evidentiary rulings -- including a decision to permit an expert to testify pursuant to N.J.R.E. 702 -- for abuse of discretion. Id. at 455.

On this appeal, the State characterizes the trial judge's decision as a departure from established case law. We disagree. His ruling was consistent with settled precedent upholding a defendant's right to present expert testimony designed to explain to the jury why a particular defendant's psychological condition would make that defendant vulnerable to giving a false confession. By contrast, courts have routinely rejected efforts to present expert testimony concerning the phenomenon of false confessions in general or the impact of police interrogation methods in producing false confessions.[2]

_____

[2] Much of the State's brief is devoted to arguing that defendant's expert should not be permitted to testify because there is no scientific basis for the theory that drug addiction causes false confessions. That is a "straw man" argument, based on an inaccurate characterization of the expert's proposed testimony. On cross-examination, the expert explained that "there is a body of literature that discusses the symptoms and how certain psychiatric disorders can cause a person to be vulnerable to giving . . . false confessions but not necessarily
(continued)

In this State, the leading cases are <u>State v. Free</u>, 351 <u>N.J. Super.</u> 203 (App. Div. 2002), <u>State v. King</u>, <u>supra</u>, and <u>State v. Rosales</u>, 202 <u>N.J.</u> 549 (2010). In <u>Free</u>, the defense sought to introduce expert testimony addressing false confessions as a phenomenon and applying the expert's views on that topic to the details of the defendant's interrogation in that case. We held that the testimony was inadmissible, distinguishing cases permitting testimony about a specific defendant's psychological diagnosis:

> However, in each of those cases the psychological testimony concerned scientifically recognized mental disorders relevant to each defendant's confession, rather than, as here, testimony about the effects, in general, of police interrogation techniques. We also acknowledge that a few decisions from other jurisdictions have permitted psychological testimony on the effects of police interrogation. For now, we merely note that none of them went as far as the trial judge did here, and that, in any case, as shall appear, we do not find them persuasive.
>
> [<u>Free</u>, <u>supra</u>, 351 <u>N.J. Super.</u> at 213 (citation omitted).]

---

(continued)
saying that this . . . psychiatric disorder causes false confessions." The expert then gave a lengthy explanation of the physical and mental effects of heroin withdrawal and how it could affect an addict's responses to questions. However, he also testified that he could not opine whether this defendant's confession was true or false. The State's argument on this point warrants no further discussion here. <u>R.</u> 2:11-3(e)(2).

A-2990-12T3

By contrast, in <u>King</u>, the defendant had a long and documented history of mental illnesses of various types recognized in the Diagnostic and Statistical Manual of Mental Disorders (DSM). <u>See</u> <u>King</u>, <u>supra</u>, 387 <u>N.J. Super.</u> at 532. We held that the defendant could present expert opinions concerning his mental illness and testimony explaining to the jury why someone with those types of mental illnesses would be more vulnerable to giving false confessions. <u>Id.</u> at 538. However, we held that the expert could not testify that this defendant's confession was false or was a product of his mental disease. <u>Id.</u> at 540.

Our decision in <u>King</u> derived from the United States Supreme Court's opinion in <u>Crane v. Kentucky</u>, 476 <u>U.S.</u> 683, 106 <u>S. Ct.</u> 2142, 90 <u>L. Ed.</u> 2d 636 (1986). There, the Court held that a defendant had a constitutional right to present evidence concerning "the physical and psychological environment in which the confession was obtained." <u>Id.</u> at 684, 106 <u>S. Ct.</u> at 2143, 90 <u>L. Ed.</u> 2d at 641. The Court reasoned that such evidence was relevant and admissible on the issue of the truthfulness, as well as the voluntariness, of a confession:

> [T]he circumstances surrounding the taking of a confession can be highly relevant to two separate inquiries, one legal and one factual. The manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness, a question most, but not all, States assign

to the trial judge alone to resolve. But the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt. And, as with any other part of the prosecutor's case, a confession may be shown to be "insufficiently corroborated or otherwise . . . unworthy of belief." Indeed, stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?

[Id. at 688-89, 106 S. Ct. at 2145-46, 90 L. Ed. 2d at 644 (citations omitted).]

The Court noted that the issue of whether a confession was voluntary might overlap with whether it was reliable. However, a defendant has the right to present the jury with evidence on the confession's unreliability, even if the judge earlier held that the confession was voluntary:

[R]egardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.

[Id. at 689, 106 S. Ct. at 2146, 90 L. Ed. 2d at 644 (citations omitted).]

7                                              A-2990-12T3

In _King_, we recognized that courts from many other jurisdictions had relied on _Crane_ in permitting expert testimony concerning "a defendant's psychological makeup and internal psychological characteristics impacting on the reliability of the confession." _King_, supra, 387 _N.J. Super._ at 538.

> In _People v. Hamilton_, 163 _Mich. App._ 661, 415 _N.W._2d 653 (1987), the Michigan Court of Appeals reversed a murder conviction because of the trial court's exclusion of testimony by a clinical psychologist as to how the defendant's psychological makeup might have affected his statements to the police. The Court stated, "_Crane_ did not concern evidence of the defendant's psychological makeup, but focused instead on the physical and psychological aspects of an interrogation. Nonetheless, we believe the United States Supreme Court's reasoning is equally applicable to otherwise admissible expert testimony." _Id._ at 655; see also, _State v. Oliver_, 280 _Kan._ 681, 124 _P._3d 493, 505-09 (2005) (holding psychologist's testimony of the defendant's post-traumatic stress disorder and dependent personality disorder admissible as part of the psychological environment under _Crane_ as bearing on defendant's ability to respond reliably to interrogation, but finding preclusion of testimony harmless error), cert. denied, ___ _U.S._ ___, 126 _S. Ct._ 2361, 165 _L._ Ed. 2d 286 (2006); _State v. Buechler_, 253 _Neb._ 727, 572 _N.W._2d 65, 71-74 (1998) (reversing a murder conviction, holding that under _Crane_ a clinical psychologist should have been allowed to testify that the defendant's drug withdrawal and psychological disorders may have resulted in a false confession, as such testimony pertained to the psychological circumstances under which the defendant confessed and had a bearing on the reliability of the confession); _Pritchett v. Commonwealth_, 263

Va. 182, 557 S.E.2d 205, 208 (2002) (same as to testimony of clinical and forensic psychologists about the defendant's mental retardation and vulnerability to interrogative suggestibility).

[Id. at 538-39.]

Notably, that precedent included Buechler, supra, which addressed the admissibility of expert testimony concerning the defendant's drug withdrawal.[3] There, the Nebraska Supreme Court held that the testimony was admissible to explain the defendant's mental state and how it might have affected the reliability of his confession:

> Thus, we reach the question as to whether the district court here abused its discretion in rejecting the psychologist's proffered testimony, which undertook not to tell the jury how to decide the case or what result should be reached on any issue to be resolved by it, but, rather, to explain Buechler's mental state at the time of the recorded confession. While ordinary citizens might understand that drug withdrawal is uncomfortable, without expert evidence

---

[3] In McIntosh v. State, 532 So.2d 1129, 1130 (Fla. App. 1988), the court held that the defendant should have been permitted to present testimony that "she was, during the confession, 'jonesing' or coming down from a high which impaired her ability to withstand pressure." The court did not specify whether the proposed testimony was from a lay or expert witness, but stated that excluding the evidence deprived the defendant of a "meaningful opportunity" to challenge the confession's reliability and hence "to present a complete defense." Ibid. See also State v. Burns, 691 P.2d 297, 301-02 (Ariz. 1984) (defendant, who claimed he was under the influence of LSD when he confessed, was entitled to attack the confession's reliability by presenting expert testimony concerning the drug's effects).

A-2990-12T3

ordinary citizens would not be expected to understand that in Buechler's case, withdrawal, combined with his disorders, may have made him suggestible, may have caused him to process information haphazardly, and may have caused him to reach faulty conclusions. Under that state of the record, we must conclude that the district court abused its discretion in excluding the proffered testimony.

[Buechler, supra, 572 N.W.2d at 73.]

The admissibility issue, however, long predated Buechler. In 1879, the Iowa Supreme Court held that a defendant was entitled to present expert testimony that he suffered from alcohol addiction and withdrawal symptoms at the time of his confession:

> The defendant, for the purpose of showing his mental condition at the time of the alleged confession testified to by Mrs. Squires, introduced witnesses who showed that prior to that time he had been exceedingly intemperate. The defendant then called one Dr. Hay as an expert in nervous diseases, including delirium tremens and other forms of insanity. He was asked in substance what mental condition was indicated in the defendant at the time he was seen by Mrs. Squires, supposing his conduct, language and appearance to be such as described by her, and supposing his habits to be such as shown in regard to drink. The counsel for the State objected to the question as incompetent and immaterial to the main issue in the case. The counsel for the defendant then stated that they proposed to show by the witness that the defendant, at the time of the alleged confession, was laboring under delirium tremens. The counsel for the State repeated their objection, and the objection

was sustained. In this we think that the court erred. Where a confession is shown, and there is evidence tending to show that the defendant, at the time of the confession, was laboring under delirium tremens, or was otherwise insane, we think that the opinion of an expert may properly be taken upon the defendant's mental condition as indicated by the proven facts. We see no reason why his insanity may not be established by any kind of evidence which is employed in any case to establish such a fact.

[State v. Feltes, 1 N.W. 755, 760 (Iowa 1879).]

Hence, it is well established that a defendant has the right to present expert psychological testimony bearing on the reliability of his confession.

Nonetheless, that right has limits. While a defendant may present expert testimony bearing on psychological diagnoses that require knowledge outside the understanding of lay jurors, an expert may not testify to factors within the ken of the average juror. See Rosales, supra, 202 N.J. at 563. Thus, expert testimony is unnecessary to explain to jurors why a defendant might have falsely confessed after the police allegedly threatened to electrocute him. Id. at 566. Nor may an expert invade the jury's role by testifying that a defendant "confessed to a crime he did not commit." Id. at 552.

While Rosales upheld the trial court's exclusion of expert testimony about false confessions, we find the State's heavy

reliance on <u>Rosales</u> to be misplaced. In <u>Rosales</u>, the Court cited <u>King</u> and <u>Free</u> with approval. It found that, as in <u>Free</u> and unlike in <u>King</u>, the expert evidence Rosales offered consisted of generalities about false confessions, untethered to any recognized psychological disorder.

> In the present case, we agree with the Appellate Division's conclusion that the proposed expert opinion of Dr. Latimer was more akin to the expert testimony disallowed in <u>Free</u>, <u>supra</u>, and unlike the expert testimony allowed in <u>King</u>, <u>supra</u>. Here, defendant had no longstanding prior diagnosis of a mental disorder. Instead, in support of defendant's motion to allow expert testimony on false confessions, Dr. Latimer simply alluded to defendant's generalized notions of anxiety and fear in the interrogation setting, as well as his education and national origin.
>
> Simply stated, we find nothing exceptional about this case to require an expert to opine that defendant gave a false confession. The average juror would understand defendant's argument that because he was threatened with immediate death by electrocution he gave a false confession to save his life.
>
> [<u>Id.</u> at 566.]

The Court also found that, on the record presented, the proposed testimony "was not about a field that is at a 'state of the art' to be considered sufficiently reliable." <u>Id.</u> at 565.[4]

---

[4] The Court left "to another day on a different record," the question of whether, "even without a DSM diagnosis, there might

(continued)

For future guidance, the Court provided a general principle for evaluating expert witness testimony concerning confessions:

> We recognize that in some other case the evidence presented may satisfy the New Jersey Rules of Evidence to permit expert testimony regarding a defendant's confession. We are in general accord with the Attorney General's suggestion that New Jersey should follow the following principle:
>
>> [E]xpert witnesses may testify to a witness's or defendant's mental disorder and the hypothetical effect of that disorder. Expert witnesses may not, however, render an opinion on the defendant's veracity or reliability of a confession because whether a confession is reliable is a matter in the jury's exclusive province; it is essential that the testimony actually tell jurors something they would not otherwise know from their usual human experience and that it remain hypothetical or theoretical, and it must stop short of expressing the expert's judgment on the defendant's reliability in the specific instance of the confession submitted for the jury's consideration.
>
> [Id. at 566-67 (quoting 23 C.J.S. Criminal Law § 1444 (2006) (footnotes omitted)).]

The Court analogized that principle to the rule allowing expert opinion on Child Sexual Abuse Accommodation Syndrome "'to

(continued)
be some other scientifically reliable evidence to warrant expert testimony regarding false confessions." Id. at 567.

13                                                          A-2990-12T3

describe traits found in victims of such abuse'" but not to assess witness credibility or other "'ultimate issues that are for jury resolution.'" Id. at 567 (quoting State v. J.Q., 130 N.J. 554, 556 (1993)). The Court drew the same analogy to expert testimony on battered woman's syndrome. Ibid. (citing State v. Townsend, 186 N.J. 473, 492-93 (2006)).

This holding was consistent with the Court's prior ruling in State v. Vandeweaghe, 177 N.J. 229 (2003). In Vandeweaghe, a defense expert testified, based on defendant's history of alcohol addiction and his physical symptoms at the time of the crime, that defendant was so intoxicated that he could not form the mens rea to commit purposeful or knowing murder. Id. at 234. In rebuttal, the State produced an expert who testified that because defendant was a longstanding alcoholic, he was actually less likely to be affected by ingesting large amounts of alcohol. Id. at 234-35. The Court expressed no disapproval of either expert's testimony about the effects of defendant's alcohol addiction. However, the Court held it was prejudicial error for the State's expert to also testify that the defendant suffered from an antisocial personality disorder that made him more likely to lie and lie successfully. Id. at 239-40. That testimony "impermissibly usurped the jury's exclusive role in assessing witness' credibility." Id. at 239.

In State v. Townsend, supra, 186 N.J. at 479, the State sought to present expert testimony on the issue of battered woman's syndrome, to explain why the victim's dying declaration, which exculpated the defendant, might not be credible. As in this case, the expert's testimony was intended to explain to the jury why a statement normally considered reliable (there, a dying declaration; here, a confession) might be unreliable. The Court held that the expert testimony was admissible. Id. at 499; see People v. Kowalski, 821 N.W. 2d 14, 36 (Mich. 2012) (noting that "circumstances of a false confession are beyond the average person's understanding" and expert testimony "can help jurors understand . . . counterintuitive behavior.").

In State v. Burr, 195 N.J. 119 (2008), the Court held that the defendant could present expert testimony about Asberger's syndrome in order to explain to the jury defendant's seemingly odd or suspicious behavior. Citing King with approval, the Court reviewed the myriad situations in which expert psychiatric testimony was appropriate. Id. at 128. "[E]vidence of mental defect, illness, or condition has been admitted . . . to assess credibility or otherwise evaluate the subjective perceptions of an actor." Ibid. The Court noted that those permissible purposes included evaluating a "defendant's false confession claim." Ibid.

Applying the above cited cases to the record before us, we agree with the trial judge that this case is similar to <u>King</u> and dissimilar to <u>Rosales</u> and <u>Free</u>. Drug addiction and withdrawal are recognized physical and psychological conditions that defendant's expert was well qualified to explain to the jury. See <u>N.J.R.E.</u> 702; <u>King</u>, <u>supra</u>, 387 <u>N.J. Super.</u> at 544. Further, lay jurors might not perceive all of the ways in which a person experiencing heroin withdrawal could be vulnerable to giving a false confession.[5] See <u>N.J.R.E.</u> 702. At the <u>N.J.R.E.</u> 104 hearing, the expert cogently explained the myriad agonizing symptoms of withdrawal and why lay persons might not understand the extent of withdrawal's effects on an addict.

From <u>Crane</u>, we derive the bedrock principle that, to have a meaningful opportunity to attack the credibility of his confession, a defendant must be able to present relevant testimony that will assist the jury in its evaluation of the confession's reliability. If a defendant has a recognized, diagnosed mental condition, of a type that could make him or her more vulnerable to giving a false confession, the defense has the right to present an expert to explain the mental condition

---

[5] Needless to say, this information may also be highly relevant to the voluntariness of defendant's confession, an issue not before us on this appeal.

and to explain how and why it could affect the confession's reliability.

This case illustrates the importance of such testimony. The State's case rests heavily, if not exclusively, on defendant's confession. The prosecutor stated at the N.J.R.E. 104 hearing that the forensic evidence was inconclusive. The co-defendants have not implicated defendant in the crime, although one co-defendant pled guilty and received a forty-five year sentence. The trial judge noted, during the hearing, that many aspects of defendant's confession may present fodder for cross-examination of the police who conducted the interrogation. Those include contradictions between what defendant admitted he did to the victim and the forensic evidence found on her body, as well as the manner in which the police conducted the questioning. However, as defense counsel noted, without the expert's testimony about the physical and mental effects of heroin withdrawal, the defense would be hamstrung in explaining to the jury why defendant would admit to a crime he did not commit. See Crane, supra, 476 U.S. at 689, 106 S. Ct. at 2146, 90 L. Ed. 2d at 644.

As in King, we agree that an expert may testify that the defendant's diagnosed mental problems made the defendant vulnerable to giving a false confession and had the capacity to affect the reliability of the defendant's confession. King,

<u>supra</u>, 387 <u>N.J. Super.</u> at 537-39. In other words, the defendant's mental condition may provide an explanation, other than the truth, for the defendant's confession. In that connection, the expert may explain the nature and symptoms of the defendant's mental condition (in this case, heroin addiction and withdrawal) and may explain how those symptoms could have affected defendant's responses during the interrogation. From our reading of <u>Rosales</u>, we conclude that the expert may not opine that the confession <u>was</u> unreliable, <u>was not</u> credible, or <u>was</u> false. Those issues are for the jury to decide. Moreover, the trial court should provide the jurors with an appropriate limiting instruction to guide their consideration of the expert's testimony.

Finally, we comment on an additional, foundational issue. While an expert can testify to hearsay in explaining his opinion, <u>see</u> <u>N.J.R.E.</u> 703(3), the jury cannot consider the included hearsay for its truth. Thus, a defendant may not place before the jury the facts critical to his defense by relying on included hearsay in his expert's opinion. In this case, there must be some legally competent evidence that defendant was, in fact, suffering from heroin withdrawal while the police were interrogating him. Otherwise, his expert's testimony would be irrelevant and a net opinion.

<u>King</u> addressed the issue of included hearsay within a psychological expert's testimony, and our discussion there provides helpful guidance. We explained that an expert may testify to statements made to him by the defendant, in order to explain the expert's diagnosis. <u>King</u>, <u>supra</u>, 387 <u>N.J. Super.</u> at 548. However, the jury must be cautioned not to consider the defendant's statements for their truth. <u>Id.</u> at 549. The analysis in <u>King</u> is worth quoting at length:

> Defendant's statements to the forensic psychiatrist made during the interviews present a different situation. Our courts have consistently held that a psychiatrist in a criminal case may testify as to what a defendant told him or her if the expert relied on the statements in formulating an opinion about the defendant's mental or psychiatric condition, and such hearsay declarations "constituted a necessary element in the formulation of [the] opinion."

> Of course, these hearsay statements are not admitted for their truth, and the expert's testimony must be circumscribed by an appropriate limiting instruction. Moreover, if the psychiatrist's opinion hinges upon the truth of defendant's statement, the jury should be further instructed that the probative value of the psychiatrist's opinion will depend upon whether there is independent proof of the hearsay statement.

> We are mindful of the trial court's concern about the potential for defendant to allow Dr. Harris to parrot and place before the jury defendant's version of what occurred during the interrogation, without the State's ability to cross-examine

defendant. The trial court, however, erred in imposing a blanket prohibition that appears to bar testimony by Dr. Harris as to *any* statements made by defendant to him during the clinical interviews pertaining to the interrogation. With this limitation, we cannot perceive how Dr. Harris will be able to provide a factual basis for his opinions and present anything other than a net opinion, unworthy of any consideration.

We believe a general rule of guidance is the wiser course in the posture of this case. . . . [W]ithin the guidelines of N.J.R.E. 703 and the case law, Dr. Harris shall be permitted to testify as to those statements made to him by defendant during the clinical interviews pertaining to the interrogation that he relied on and were essential to his diagnosis of defendant's personality disorders and formulation of his medical opinion that these disorders are consistent with defendant's claim of false confession. Moreover, the information should be of a type typically relied upon in the psychiatric community in making such assessments and diagnoses.

[Id. at 549-50 (citations omitted).]

In this case, the expert opined that aspects of defendant's physical conduct and appearance during the videotaped interrogation were consistent with heroin withdrawal. The jury could observe that conduct for themselves by watching the video, and could accept or reject the expert's evaluation. The expert also relied on defendant's medical records from earlier years, which documented his long history of heroin addiction. Additionally, the expert considered the county jail's medical records, which included notations that, shortly before defendant

20                                                                    A-2990-12T3

confessed, he was treated with Librium, a drug used to blunt the effects of alcohol addiction. However, the expert also based his opinions on interviews with defendant and his family. The jury must be instructed that they cannot consider those interview statements for their truth.

As in King, we leave to the trial judge the task of ruling on specific evidentiary issues that may arise during the expert's trial testimony or during in limine motions. In that regard, we note that the expert's testimony at the Miranda hearing may serve as a sort of "dress rehearsal" for the trial, without presenting the risk of jury confusion or prejudice. The judge can readily distinguish inadmissible hearsay from admissible evidence presented at that hearing, and the hearing may provide a more complete picture of how the defense intends to use this expert's testimony at the trial and what, if any, additional factual foundation the defense may present. Nothing in our opinion precludes the State from filing an in limine motion prior to the trial to address specific evidentiary issues relating to the expert's proposed trial testimony.[6]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] Of course, if the court determines after the Miranda hearing that defendant's confession was not voluntary, an issue as to which we intimate no view, issues relating to the expert's trial testimony will become moot.

A-2990-12T3