NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4534-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MORGAN G. MESZ,

    Defendant-Appellant.

APPROVED FOR PUBLICATION

June 5, 2019

APPELLATE DIVISION

Argued December 19, 2018

Before Judges Alvarez and Mawla.

Reargued May 22, 2019 – Decided June 5, 2019

Before Judges Alvarez, Reisner, and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-07-0761.

Robert Carter Pierce, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robert Carter Pierce, on the brief).

Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Jennifer Davenport, Acting Union County Prosecutor, attorney; Michele C. Buckley, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

While wielding a tomahawk and knife, defendant Morgan Mesz gravely injured two women and brutally attacked the neighbor who came to their rescue. At trial, defendant advanced the theory that during the 6:00 a.m. January 7, 2011 incident, he was under the influence of then-legal synthetic marijuana to the extent that he was pathologically intoxicated and his use of the drug triggered a rare substance-induced psychosis. N.J.S.A. 2C:2-8(e)(3) defines "pathologically intoxicated" as "intoxication grossly excessive in degree, given the amount of the intoxicant, to which the actor does not know he is susceptible." The State's psychopharmacology forensic expert videotaped his May 2013 four-hour interview with defendant. The prosecutor at trial, while examining the expert on direct, played portions[1] of the interview to the jury, and argued in summation that the information defendant relayed was substantive evidence contrary to the defense theory. In the absence of a limiting instruction, we reverse.

Defendant was convicted of two counts of attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3 (counts one and two); the lesser-included charge of third-

---

[1] Only the audio was played because defendant was dressed in prison garb during the interview.

degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count three); unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count four); and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count five). He was sentenced to two consecutive sixteen-year prison terms, subject to the No Early Release Act's (NERA) eighty-five percent parole ineligibility, N.J.S.A. 2C:43-7.2, on the attempted murder counts. The judge imposed a NERA consecutive four-year term of incarceration for the third-degree aggravated assault charge. The weapons offenses were merged into the attempted murder convictions. Defendant's sentence thus aggregated to thirty-six years imprisonment.

When defendant was arrested at the scene, he said that he was described in the Bible and had to kill the women to protect the children of Newark. After treatment for minor injuries at a nearby hospital, he was taken to the Ann Klein Forensic Center for evaluation.

At trial, the hospital committing psychiatrist testified that defendant was suffering from active paranoid delusions when brought in that morning. She could not determine if the cause was schizophrenia, substances, or a combination of both. She said that defendant was then suffering from "psychosis not otherwise specified, . . . rule out schizophrenia, rule out substance-induced psychotic disorder[.]" On cross-examination, the

prosecutor asked the doctor if she would rule out the synthetic marijuana induced part of the diagnosis, to which she responded in the affirmative.

On cross-examination, defendant's expert psychiatrist clarified that by using the term "rule out," the committing physician did not mean to imply that she had eliminated substance abuse as a possible trigger for the psychosis. She meant only that it needed to be further investigated before a diagnosis could be made with certainty—before it could be "ruled out."

Defendant's psychiatric expert opined that at the time of the offense, defendant suffered from a substance-induced psychotic disorder and could not differentiate between right and wrong. His opinion did not vary, even after being confronted in cross-examination with bizarre incidents in defendant's past that suggested a significant prior mental health history.

The State called its forensic expert on rebuttal. Defense counsel's only objection to the tape being played during his examination focused on the expert's credentials, namely, that he was not a licensed psychologist. No Miranda[2] warnings were given prior to the session.

The psychopharmacologist testified that the "acute phase" effects of synthetic marijuana manifest between two to four hours after ingestion. The expert opined that if defendant had smoked between 6:00 and 8:00 p.m. the

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

prior evening, he would not have been under the influence of the acute effects of the synthetic marijuana by 6:00 a.m. the following morning. He found no records indicating that the drug had induced aggressive behavior in a database including some 13,000 users. The expert further opined that persons with pre-existing mental health conditions might suffer from hallucinations, usually auditory, but that even when those occurred, they only resulted in self-harm.

During the interview, defendant told the State's expert he had been smoking "a lot" of synthetic marijuana the month prior to the incident. He said he became addicted to the substance, to the extent he was chain smoking it in blunts.[3]

Defendant also said the last time he smoked prior to the January 7, 2011 incident was before leaving his home at approximately 7:00 or 8:00 p.m. on January 6. Afterwards, he bleached his fingers and his lips, kissed his girlfriend goodbye, and "smashed the pipe." That day he had smoked as many as fifteen to twenty blunts, and fifteen to twenty that night.

The prosecutor also played defendant's description, approximately six minutes of the interview, of his assault of the victims' neighbor, and the police arrival at the scene. When they arrived, defendant claimed he and the

---

[3] A "blunt" is a hollowed-out cigar filled with marijuana or a similar substance.

neighbor walked calmly towards police from where they had been sitting talking amicably in the snow.

The psychopharmacologist was extensively cross-examined about articles and statistical data regarding aggressive behaviors in synthetic marijuana users and the duration period of psychosis-like symptoms brought on by the use of the drug. The State objected to the questioning on the basis that the cross-examination was straying into the area of mental defects and illnesses, reminding the court that defendant had twice denied on the record that he intended to present an insanity defense.

In summation, the prosecutor again played portions of the interview to the jury, including defendant's description of the drug quantities he had been consuming and the fact he became addicted. After doing so, the prosecutor argued that defendant's reaction to using the drug on the morning in question was not a grossly excessive response, only the result of his mental illness, and therefore did not satisfy the requisite elements of pathological intoxication.

After playing several more minutes of the audio, the prosecutor directed the jury's attention to defendant's recorded description of an incident at a family holiday party days before the attack. At the party, defendant reported that he saw a five-year-old boy who to him looked like a leprechaun, and

whom he planned to "yoke up."[4]   From this, the prosecutor extrapolated that defendant was well aware of the dangers of consumption and chose to use the drug anyway.

The prosecutor argued defendant's failure to describe to the expert the quantity of intoxicant he consumed was important as well.  The prosecutor also asserted defendant's statements regarding his consumption of the drug the evening before the assault meant that he was not under the influence when the assault occurred because he last smoked it more than four hours before.

The judge did not give a limiting instruction regarding the permissible uses of defendant's statements at any point during the trial, or in his general closing charge.  When the judge instructed the jury as to the elements of the defense of pathological intoxication, the judge said there was "evidence in this case concerning the use by the defendant of synthetic marijuana and/or real marijuana approximately eleven hours before the incident in question."  The timeline came from defendant's own words in the recorded statement.

Defendant on appeal raises the following claims of error:

---

[4]  Counsel did not object to the jury hearing this event described on the tape.

A-4534-15T3

POINT I
THE TRIAL COURT ERRED BY NOT CHARGING
THE JURY, SUA SPONTE, WITH THE DEFENSE
OF DIMINISHED CAPACITY.

POINT II
MR. MESZ WAS DEPRIVED OF A FAIR TRIAL
BECAUSE THE TRIAL COURT INSTRUCTED THE
JURY THAT MR. MESZ LAST SMOKED
"SYNTHETIC AND OR REAL MARIJUANA
APPROXIMATELY ELEVEN HOURS BEFORE
THE INCIDENT IN QUESTION" BECAUSE THIS
QUESTION OF WHEN MR. MESZ LAST SMOKED
SYNTHETIC MARIJUANA WAS A QUESTION
FOR THE JURY.

POINT III
THE TRIAL COURT ERRED BY NOT BARRING
THE TESTIMONY OF DR. ROBERT J. PANDINA,
THE STATE'S EXPERT WITNESS WHO
PROVIDED "STATE OF MIND" TESTIMONY,
BECAUSE DR. PANDINA WAS NOT A LICENSED
PSYCHOLOGIST OR PSYCHIATRIST.

POINT IV
THE TRIAL COURT ERRED BY ALLOWING THE
STATE TO INTRODUCE IN EVIDENCE MR.
MESZ' TAPED STATEMENT TO DR. PANDINA
BECAUSE IT VIOLATED MR. MESZ' FIFTH
AMENDMENT RIGHT AGAINST SELF
INCRIMINATION AND HIS SIXTH AMENDMENT
RIGHT TO COUNSEL.

POINT V
THE TRIAL COURT COMMITTED PLAIN ERROR
BY FAILING TO INSTRUCT THE JURY, SUA
SPONTE, WITH A LIMITING INSTRUCTION
THAT MR. MESZ' STATEMENT WAS NOT
ADMITTED AS SUBSTANTIVE EVIDENCE AND
THEN ALLOWING THE PROSECUTOR TO

ARGUE THE STATEMENT WAS SUBSTANTIVE EVIDENCE OF MR. MESZ' GUILT DURING SUMMATION.

POINT VI
THE TRIAL COURT ERRED BY NOT VOIR DIRING MR. MESZ, SUA SPONTE, CONCERNING THE ISSUE OF MR. MESZ RAISING AN INSANITY DEFENSE.

POINT VII
THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING THE STATE TO INTRODUCE INADMISSIBLE N.J.R.E. 404(b) EVIDENCE THAT MR. MESZ RAPED A TWELVE YEAR-OLD GIRL AND THEN FAILING TO GIVE THE JURY A CURATIVE INSTRUCTION.

POINT VIII
THE SENTENCE IMPOSED WAS ILLEGAL BECAUSE MR. MESZ WAS NOT PRESENT AND THE TRIAL COURT FAILED TO PERMIT MR. MESZ TO EXERCISE HIS RIGHT TO ALLOCUTION.

POINT IX
THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

## I.

We address only two points. Defendant contends that the trial judge's failure to issue a limiting instruction to the jury was reversible error. Secondly, we briefly discuss defendant's argument, which is not dispositive, that the trial court erred by allowing the jury to hear defendant's interview

because it violated his "Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel."

Defendant did not object to the interview being heard by the jury. Consequently, defendant must now demonstrate it resulted in plain error, i.e., that the error was "clearly capable of producing an unjust result." R. 2:10-2; see also State v. Macon, 57 N.J. 325, 337 (1971). Under that standard, "we must disregard any error unless it is clearly capable of producing an unjust result. Reversal of defendant's conviction is required only if there was error sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Atwater, 400 N.J. Super. 319, 336 (App. Div. 2008) (alteration in original) (internal citations and quotations omitted); see also State v. Daniels, 182 N.J. 80, 95 (2004); Macon, 57 N.J. at 333; R. 2:10-2.

Since at least 1959, an expert opining on a defendant's mental health status has been permitted to include information the defendant conveyed, so long as the jury is "instructed that the probative value of the psychiatrist's opinion will depend upon whether there is, from all the evidence in the case, independent proof of the statement made by the accused." State v. Lucas, 30 N.J. 37, 79-80 (1959).

But it is also well-established that it is improper for the prosecutor to rely on otherwise inadmissible hearsay evidence relied upon by the expert "as if the evidence had been substantively admissible."  Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 7 on N.J.R.E. 703 (2018); see also State v. Scherzer, 301 N.J. Super. 363, 442-44 (App. Div. 1997).

In State v. Whitlow, the Court addressed the obligation of a defendant who intends to raise the insanity defense, to submit to a psychiatric examination conducted by the State.  45 N.J. 3, 8-10 (1965).  The Court relied on Lucas in drawing the conclusion that a defendant's statement, even a confession, is admissible only as it relates to "the sanity issue."  Id. at 16.  The Court characterized a defendant's statements to an expert as "verbal acts; circumstantial evidence for or against the claim of insanity."  Id. at 19.  As the Court went on to explain:

> If, in the opinion of the examiner, it is necessary for the formulation of an opinion as to sanity to discuss the circumstances of the alleged crime, defendant should cooperate in good faith. . . .  [A]ny inculpatory statements made by defendant in this context are not competent as admissions on the issue of guilt, and when introduced at the trial during the course of the doctor's testimony, the jury must be told so immediately, explicitly, and unqualifiedly.
>
> [Id. at 21 (emphasis added).]

Whether the expert is testifying on behalf of the State or the defendant, the rule is the same. Jurors must be immediately instructed that the substantive information defendant provided is to be used by them only to assess the expert's opinion. It is not to be used as direct evidence of guilt.

In State v. Granskie, 433 N.J. Super. 44, 56-57 (App. Div. 2013), we reiterated the principle clearly enunciated in State v. King, 387 N.J. Super. 522 (App. Div. 2006), and the earlier cases. When a jury hears statements made by a defendant to a psychological expert, "the jury must be cautioned not to consider the defendant's statements for their truth." Granskie, 433 N.J. Super. at 57. In Granskie, we quoted King—if hearsay statements are properly admitted because they are relied upon by an expert, "the expert's testimony must be circumscribed by an appropriate limiting instruction." Ibid. (quoting 387 N.J. Super. at 549). "The jury must be instructed that they cannot consider . . . interview statements for their truth." Id. at 58.

The principle applies with equal force in this case. The State's expert was charged with evaluating the merits of the defense, analogous to a State's expert who is evaluating the merits of an insanity defense. In both cases, an expert can describe to the jury the facts on which his opinion is based—but only in order for the jury to determine what weight to give to the expert's opinion.

A-4534-15T3

## II.

The absence of a limiting instruction in this case was highly prejudicial and amounts to plain error. Obviously, the expert could have expressed his opinion, and recited the facts on which it was based, even those supplied by defendant, without the prosecutor playing the tape at all. The prosecutor did not proffer a reason the jury needed to hear the tape.

Defendant's statements were patently used as direct evidence. The interview was not presented to the jury merely to establish the basis for the expert's opinion that at the time of the brutal attack defendant was not under the influence of synthetic marijuana, and to discount the notion that the use of synthetic marijuana could cause aggressive behavior. In the absence of a limiting instruction, the jury would have used defendant's disclosures as direct evidence nullifying his defense.

The potential prejudice resulting from the lack of a limiting instruction was compounded when the prosecutor argued in summation that when the attack occurred, defendant was not under the influence of synthetic marijuana. He did so, not based on the expert's conclusions or findings alone, but on defendant's own words. The prosecutor stopped and started the tape, playing selected portions to the jury, while discussing the information defendant conveyed. The prosecutor argued that the jury should rely on defendant's

words—not the expert's conclusions—in order to reject the pathological intoxication defense.

In reality, the prosecutor had to elicit from the State's expert only that in addition to defendant's medical records and the discovery in the case, the expert relied on facts relayed by defendant during the four-hour interview. The prosecutor could have then asked the expert for his opinion and had him discuss the details upon which he relied.

The court's failure to sua sponte give a limiting instruction was unduly prejudicial and compounded the error that occurred when the tape was played to the jury as direct evidence. The tape was damning evidence—defendant's statements rambled, sounded confused, and included, among other things, references to other bad acts, such as defendant's homicidal reaction to the sight of a five-year-old at a family party. If playing the tape had a purpose other than to prejudice the jury against defendant, we fail to see it.

III.

Which brings us to defendant's claim that his statement should not have been admitted as evidence because it was improperly obtained, was uncounseled, and the expert did not re-Mirandize him. Defendant also contends the State should not have been permitted to conduct the interview at all since he was not raising insanity or diminished capacity. See State v.

Myers, 239 N.J. Super. 158, 169-70 (App. Div. 1990). We do not agree that such interviews are barred except when those two defenses are raised, see id. at 169, but it is not necessary for the issue to be addressed in this appeal. It seems self-evident that defendant raised a mental status defense that required him to submit to an interview by the State's expert. See id. at 170. Arguably, by raising the mental status defense, a defendant is effectively waiving his right to remain silent.

A defendant does not have the right to active representation during an interview by a state's expert as to mental status defenses. Counsel is permitted to be present only for observational purposes, not as a participant. See State v. Obstein, 52 N.J. 516, 530-31 (1968); Whitlow, 45 N.J. at 27-28.

We cannot discern from the record the circumstances of the interview with regard to defendant's attorney. We assume, but it is an assumption only, that he was given notice but elected not to be present.

Miranda is ordinarily inapplicable when defendants are interviewed by the State's psychiatric or psychological experts. See Whitlow, 45 N.J. at 16-17. The rationale is fair, however, because the statements are being elicited not to establish culpability, but only to enable the expert to formulate his or her opinion, and jurors will be told they cannot use the statements as direct evidence. Ibid. Ordinarily, in cases in which a defendant raises a mental

status defense, he is not disputing that he committed the act—he is disputing that he had the mens rea to be held criminally accountable for it.

In this case, however, defendant's recorded statements were used to directly bolster the State's case, disprove the defense, and convict defendant. The logic behind the inapplicability of <u>Miranda</u> to this kind of interview unravels in this case because of the manner in which the statements were used. <u>Miranda</u> may have been violated—but ultimately that issue too need not be reached.

## IV.

During the retrial of this matter, should the State wish to play the taped interview, the trial court must conduct a hearing regarding the justification for admission of otherwise seemingly inadmissible hearsay. There may be legitimate reasons for playing the tape to the jury, but they need to be carefully scrutinized before the trial judge decides the question.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION