# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0421-22

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.S.,

     Defendant-Appellant,

and

M.O. and V.M.,

     Defendants.

_____

IN THE MATTER OF M.S.,
M.M. and T.M., minors.

_____

Argued April 22, 2024 — Decided May 2, 2024

Before Judges Sabatino, Mawla, and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0152-20.

Laura M. Kalik, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Laura M. Kalik, on the briefs).

Michelle J. McBrian, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Michelle J. McBrian, on the brief).

David Ben Valentin, Assistant Deputy Public Defender, argued the cause for minors (Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; David Ben Valentin, of counsel and on the brief).

PER CURIAM

In this Title 9 case brought by the Division of Child Permanency and Protection ("the Division"), defendant K.S. ("the mother") appeals from the Family Part's June 14, 2022 order and associated oral decision. The trial court found the mother had abused her infant son T.M. ("Tyler")[1] in violation of N.J.S.A. 9:6-8.21(c)(4)(b), through her misuse of not-currently-prescribed pain

---

[1] We use pseudonyms and abbreviations to maintain confidentiality. R. 1:38-3(d)(12).

killers while she was pregnant with Tyler, which caused his premature birth and neonatal withdrawal symptoms ("NAS"). We affirm.

The pertinent facts were developed in depth at an extensive fact-finding hearing conducted before Judge Margaret M. Marley over nine intermittent days from March to May 2022. The Division presented testimony from numerous fact witnesses, as well as expert testimony from Tyler's treating physician. The mother testified in her own defense and presented competing testimony from a retired physician with expertise in NAS. V.M., Tyler's father, was not charged and no findings of abuse or neglect were made against him.

Tyler was born prematurely at thirty-five weeks in August 2019 at the Jersey City Medical Center. A toxicology analysis revealed that he had amphetamines and benzodiazepines in his urine, although amphetamines were not detected in his first stool (medically referred to as his meconium) and there was a "quantity insufficient" in his stool to reveal benzodiazepines. At three days of life, Tyler began suffering from withdrawal symptoms, including tremors and extreme irritability. He was diagnosed with NAS and treated for withdrawal symptoms at two successive hospitals before being discharged to his parents. Meanwhile, the mother also tested positive for amphetamines and benzodiazepines.

The Division's theme at trial was that during her pregnancy, the mother misused pain killers that had been prescribed for her in the past, but which were no longer currently prescribed, along with other non-prescribed drugs. The Division contended the mother knew from a previous pregnancy that it would be harmful to the infant in utero for her to continue to use the drugs.

The mother contended that the drugs had all been duly prescribed to her for back pain stemming from when she was a teenager, and that her doctors allegedly had not restricted her usage of them during her pregnancy. The mother admitted in a substance abuse evaluation that during her pregnancy she had taken oxycodone four times a day and morphine twice per day. Her last prescription for those drugs was filled in December 2018, when she received 120 oxycodone pills and 30 morphine pills.

The record contains no evidence that oxycodone or morphine was prescribed for the mother by any physician who was aware she was pregnant with Tyler. The record does show that an internist prescribed Tramadol, an opiate, to her in May 2019, but his medical records and testimony do not reflect he was made aware that she was pregnant.

The mother also disputed that her drug usage had caused Tyler any harm. Through her expert, who never examined her or Tyler, the mother hypothesized

4

other possible reasons for Tyler's condition, none of which the trial court found persuasive. She also stressed that the amphetamines and benzodiazepines had not been detected in Tyler's meconium.

At the hearing's conclusion, the trial court concluded the mother had abused Tyler within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b). In her comprehensive oral opinion, the judge found the Division's witnesses, including its expert, more credible than the defense witnesses. Among other things, the judge noted the mother's inconsistent accounts of key events, such as when she first knew she was expecting a child and first told doctors she was pregnant.

In her written order, the judge summarized her conclusions as follows:

> For all the reasons stated on the record, [the c]ourt finds that [the mother] failed to exercise a minimum degree of care pursuant to N.J.S.A. 9:6-8.21(c)(4)(b) by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, specifically, by failing to remediate her substance abuse issues, ingesting illicit substances while pregnant with [Tyler], causing the child to test positive for substances, suffer withdrawal symptoms, and require continuing medical care thereby placing the child at substantial risk of harm.

On appeal, the mother argues: (1) there was insufficient evidence to support the trial court's legal conclusion that she abused or neglected Tyler by using prescription medication during pregnancy; (2) the court improperly shifted to her the burden to prove the cause of her back pain and that she did not use

5

illicit medications; (3) the Division failed to show Tyler suffered from NAS, as opposed to other conditions resulting from prematurity; and (4) the court abused its discretion by allowing the Division's testifying expert to provide an alleged net opinion critical of the mother's expert that was beyond the scope of his medical records. The Law Guardian joins with the Division in opposing the appeal.

It is well settled that the scope of appellate review in this non-jury Title 9 setting is narrow. Appellate review of the Family Part's abuse or neglect finding is limited. N.J. Div. of Youth & Fam. Servs. v. S.H., 439 N.J. Super. 137, 144 (App. Div. 2015) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)). The court must determine whether the decision "is supported by '"substantial and credible evidence" on the record.'" N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007)).

"Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare, 154 N.J. at 413; see also N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010). In that vein, appellate courts should "defer to the factual findings of the trial court because it has the opportunity to make first-

hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting M.M., 189 N.J. at 261). A family court's decision should not be overturned unless it went "so 'wide of the mark'" that reversal is needed "to correct an injustice." F.M., 211 N.J. at 448 (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)).

Substantively, "Title 9 controls the adjudication of abuse and neglect cases." M.C. III, 201 N.J. at 343 (citing N.J.S.A. 9:6-8.21 to -8.73). "The focus of Title 9 'is not the "culpability of parental conduct" but rather "the protection of children."'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 368 (2017) (quoting Dep't of Child. & Fams., Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178 (2015)).

The Division "must prove that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)). Each case of alleged abuse is "generally fact sensitive." Id. at 33. The proofs must be evaluated based on the totality of the circumstances. Id. at 39.

A-0421-22

Title 9 defines an "abused or neglected child" as one under the age of eighteen whose

> physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of [their] parent or guardian . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment.
>
> [N.J.S.A. 9:6-8.21(c)(4).]

The "minimum degree of care" element in subsection (c)(4) reflects "the intermediary position between simple negligence and the intentional infliction of harm." A.B., 231 N.J. at 369 (citing G.S. v. Dep't of Hum. Servs., Div. of Youth & Fam. Servs., 157 N.J. 161, 179 (1999)). Upon considering the totality of the circumstances and assessing each case on its facts, the court must determine whether the parent or guardian "fail[ed] to exercise a minimum degree of care when [they are] aware of the dangers inherent in a situation and fail[] adequately to supervise the child or recklessly creates a risk of serious injury to that child." Ibid.

Applying these principles, we affirm the trial court's determination of the mother's parental neglect, substantially for the sound reasons expressed in Judge Marley's comprehensive oral opinion. We elaborate on only a few of the points raised by the mother.

First, the record contains ample credible evidence that the mother abused (or, alternatively, neglected) Tyler by ingesting not-currently-prescribed painkillers during her pregnancy. There is sufficient evidence that her misuse of those drugs was a causal factor in Tyler's NAS condition at his premature birth, which resulted in him being hospitalized nearly two months before he was discharged. "If an expectant mother's drug use causes actual harm to the physical, mental, or emotional condition of a newborn child, a finding of abuse or neglect is appropriate." N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 8 (2013).

Here, as we noted, the trial court found the Division's testifying expert more credible than the mother's expert on these issues of drug misuse and causation, particularly because the latter relied on and accepted unreliable information the mother conveyed to her. When qualified experts present opposing opinions on disputed issues, the trier of fact may accept the testimony or opinion of one expert and reject the other. Angel v. Rand Express Lines, Inc.,

66 N.J. Super. 77, 85-86 (App. Div. 1961). This principle flows out of the well-known more general proposition that jurors, or (as here) a judge in a bench trial, have the best "opportunity to hear and see the witnesses and to get a 'feel' for the case that the reviewing court [cannot] enjoy." Twp. of W. Windsor v. Nierenberg, 150 N.J. 111, 132 (1997).

The court did not shift the burden of proof to the mother as the defendant in this case. It clearly determined that the Division had proven the elements of abuse or neglect under Title 9 by a preponderance of the evidence.

The mother argues that the Supreme Court's opinion in New Jersey Division of Child Protection & Permanency v. Y.N., 220 N.J. 165 (2014), supports reversal of the trial court's finding here. Y.N. involved a pregnant woman who entered a methadone maintenance program for her opioid addiction, and whose child was born with severe withdrawal symptoms requiring two months of hospitalization. Id. at 168. The Court ruled that "a finding of abuse or neglect [could] not be sustained based solely on a newborn's enduring methadone withdrawal following a mother's timely participation in a bona fide treatment program prescribed by a licensed healthcare professional to whom she ha[d] made full disclosure." Id. at 185-86 (emphasis added).

The situation here is not comparable. The mother's use of oxycodone, morphine, amphetamines, and other substances during her pregnancy was unjustified. In Y.N., the mother was being prescribed methadone to help her detoxify from opioids that could have more significantly harmed her child. 220 N.J. at 184. The mother in Y.N. "followed the advice of a medical professional" in entering the "methadone maintenance program." Ibid. In the present case, the mother did nothing of the sort. The mother acknowledged the prescriptions for those medications were not current, and she was no longer being seen by the doctors who had prescribed the medications to her. The trial judge reasonably found the mother's doctors credible in maintaining they were not aware of this medication use during the mother's pregnancy and would have told her to stop its use if they had known.

The trial court appropriately noted the mother's acknowledgment that she knew Tyler would likely suffer from withdrawal because she was taking opioids. The trial court did not misuse this acknowledgment, as the mother contends. The court considered it in conjunction with other relevant evidence, including the mother's conscious decision to reduce her dosages to lower the medications' potential harmful effects—without current physician guidance. By the time of Tyler's birth, it had been eight months since she had a prescription for either the

11

oxycodone or the morphine. <u>Y.N.</u> is simply inapposite.

Another issue warranting comment is the mother's claim that the trial court abused its evidentiary discretion in allowing the Division's expert to include in his testimony criticisms of the mother's expert, without having generated an expert report expressing those criticisms. This claim fails for several reasons. For one thing, the pretrial order entered with the participation of all counsel did not require the parties' experts to generate and exchange expert reports before trial. The order only required the disclosure of medical "records" on which the experts would rely, not narrative reports.

Additionally, as a treating physician of Tyler (unlike the defense expert who was retained for litigation and who had not treated Tyler or his mother), the Division's expert has the latitude, within the court's discretion, to present opinions at trial arising from his treatment knowledge, unless that treater's reports are requested by opposing counsel in discovery. <u>See, e.g.</u>, <u>Delvecchio v. Twp. of Bridgewater</u>, 224 N.J. 559, 582 (2016). Trial courts "have discretion to preclude an expert from testifying to opinions not contained in [an expert] report or in any other discovery material." <u>Anderson v. A.J. Freidman Supply Co.</u>, 416 N.J. Super. 46, 72-73 (App. Div. 2010) (citing <u>Ratner v. Gen. Motors Corp.</u>, 241 N.J. Super. 197, 202 (App. Div. 1990)). The "requirements [for the

admission of expert testimony] are construed 'liberally' in favor of admitting expert testimony." State v. Granskie, 433 N.J. Super. 44, 48 (App. Div. 2013) (quoting State v. Jenewicz, 193 N.J. 440, 454 (2008)).

Lastly, we reject the mother's claim that testimony from the Division's expert comprised inadmissible "net opinion." We are satisfied the expert sufficiently explained the "why and wherefore" underlying his opinions about both the mother's misuse of painkiller medications during her pregnancy and the causation of harm to her child. Townsend v. Pierre, 221 N.J. 36, 54 (2015).

All other points raised by the mother on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0421-22